AXINN & SONS LUMBER CO., INC.,
et al., Plaintiffs,

v.

The LONG ISLAND RAILROAD
COMPANY, Defendant and
Third-Party Plaintiff,

v.

TRAFFIC EXECUTIVE ASSOCIATION–
EASTERN RAILROADS, et al.,
Third-Party Defendants.

No. 75–C–280.

United States District Court,
E. D. New York.

May 12, 1978.

George Carl Pezold, Huntington, N. Y., for plaintiffs; Thomas R. Hirschmann, Augello & Pezold, P. C., Huntington, N. Y., of counsel.

George M. Onken, Richard H. Stokes, Armand J. Prisco, Jamaica, N. Y., Walter J. Myskowski, Washington, D. C., for defendant and third-party plaintiff.

Harry G. Silleck, Jr., Leonard Garment, Douglas M. Parker, John L. Altieri, Jr., Mudge, Rose, Guthrie & Alexander, New York City, Donovan, Leisure, Newton & Irvine, New York City, for certain third-party defendants; Covington & Burling, Washington, D. C., of counsel.

BARTELS, District Judge.

On February 21, 1978, this court rendered a decision and order denying defendant's and third-party defendants' motion to dismiss plaintiffs' amended complaint, and limiting the plaintiffs' claims in the above entitled matter to the intervals between the initial filing of Ex Parte Nos. 262, 265, 267 and 281 and the respective findings of reasonableness made by the Interstate Commerce Commission on each of these increases. Both plaintiff, Axinn & Sons Lumber Co., Inc., and defendant, Long Island Rail

Road Company, now move for reargument of that order.

## AXINN'S MOTION

Axinn moves for reargument of that portion of the decision and order limiting the periods for which plaintiffs may seek recovery of overcharges. That limitation was predicated upon our reading of the Court of Appeals' decision in *Ajayem Lumber Corp. v. Penn Central Transportation Co.*, 487 F.2d 179 (2d Cir. 1973).

In *Ajayem*, 487 F.2d at 183, the Court of Appeals observed that since "the ICC has reached the merits of the reasonableness of the increases involved in this dispute and has found that the increases were lawful in that they did not exceed reasonable maximum levels", further recovery for damages resulting from violation of LIRR's right to "flag out" was accordingly limited. We had occasion to consider this language in *Ajayem Lumber Corp. v. Penn Central Transportation Co.*, No. 69–C–1585 (E.D. N.Y. January 6, 1976), in the context of LIRR's application for a rollback of Ex Parte No. 262. In that context, we remarked that "One would be inclined to think that if the 'flag out' was proper in the first instance, the subsequent determination of reasonableness by the ICC would have no effect upon LIRR's lawful right to maintain the old rates, keeping in mind the distinction between 'lawful' and 'reasonable' rates." Decision and order at 7. However, in that case, as in our February 21 decision, we interpreted the Court of Appeals language as limiting the remedies available after a finding of reasonableness, and therefore declined to rollback Ex Parte No. 262.

A contrary interpretation of the Court of Appeals' opinion in *Ajayem, supra*, is implicit in a decision by a three-judge court granting LIRR a rollback of Ex Parte No. 281, in *Long Island Rail Road Company v. United States*, No. 73–C–310 (E.D.N.Y. July 24, 1974). This decision, which was based on the Court of Appeals' decision in *Ajayem, supra*, granted LIRR a rollback even though Ex Parte No. 281 had been found reasonable by the ICC.

This court has once again reviewed the ambiguous language of the Court of Appeals in *Ajayem*, and concludes that its prior opinion questioning the subsequent determination of "reasonableness upon lawfulness" was correct. *See Ajayem, supra*, No. 69–C–1585, memorandum-decision and order at 7. To read the Court of Appeals' language as holding that any subsequent finding of reasonableness by the ICC automatically cures a defect in the filing of a proposed rate increase would be to ignore the distinction between ICC proceedings conducted under 49 U.S.C. § 15(1), and those conducted under 49 U.S.C. § 15(7). Based upon the terms of the statute, and the practice of the ICC itself, it is clear that the two proceedings do not have the same purpose or effect.

The purpose of a proceeding under § 15(1) is the prescription by the Commission of a fixed rate, binding on all railroads without any opportunity to "flag out." Proceedings under § 15(7) on the other hand, involve the Commission's authority to approve rates and tariffs filed by the railroads in their own behalf with opportunity to "flag out." The Commission's approval is permissive only, not prescriptive, and the statute expressly protects the rights of nonconsenting railroads to "flag out." Once a railroad has exercised this option, a proposed increase has no binding effect on that railroad. The Commission's subsequent finding of reasonableness applies only to those who have consented to the proposed increase, and as a permissive finding, it has no effect on those who have "flagged out" of the proposal.

Because a rate must be both reasonable and lawful, it is effective only when both of those conditions are satisfied. In this case, the rates collected under Ex Parte Nos. 262, 265, 267 and 281, although found reasonable by the ICC, remained unlawful as to LIRR until it consented to those joint rate increases on March 6, 1976. Prior to that time, these increases were unauthorized as far as the LIRR was concerned, and consequently gave rise to overcharges until

March 6, 1976. Plaintiffs' claims, therefore, cannot be limited to the interval between the filing of Ex Parte Nos. 262, 265, 267 and 281 and the ICC's respective findings of reasonableness, but instead extend until March 6, 1976, when the LIRR's consent made those reasonable rates authorized and lawful. The court's decision is amended accordingly.

## LIRR'S MOTION

Defendant LIRR moves for reargument of this court's order of February 21, 1978, to the extent it denied the motion to dismiss plaintiffs' amended complaint as to the LIRR. The primary basis for LIRR's motion for reargument is that the increased rates at issue were unlawful under Rule 52 of the ICC's Tariff Circular No. 20, 49 C.F.R. § 1300.52, subsection (c) of which provides that liability rests on the carriers responsible for the unlawful filing. Once again arguing that it was a victim rather than a villain, LIRR contends that all liability rests on the third-party defendants, and that it should therefore be dismissed as a party.

While it is true, as the LIRR contends, that the rates were unlawful as far as it was concerned, and that liability therefor must ultimately rest upon the other defendants, this does not entitle the LIRR to retain any charges which it may have unlawfully collected under color of an unlawful tariff. As we observed in denying the LIRR's original motion to dismiss plaintiffs' complaint,

> "Plaintiffs base their action ... not on the unlawful imposition of the rates but upon the *collection* of the unlawful rates, in which the LIRR admittedly participated and of which it is still a beneficiary." *Axinn v. LIRR*, 75–C–280 (E.D. N.Y. October 3, 1975), memorandum-decision and order at 5. (Emphasis in the original.)

To the extent that the LIRR sustains any damages as a result of this action, its claim for recovery against the third-party defendants is the only protection it has under 49 C.F.R. § 1300.52. Accordingly, the LIRR's motion for reargument must be denied.

SO ORDERED.