In re MAISLIN INDUSTRIES, U.S., INC., Gateway Transportation Co., Inc., Quinn Freight Lines, Inc., Richmond Cartage Corp., Mi Acquisition Corporation, Maislin Transport of Delaware, Inc., Debtors.

MAISLIN INDUSTRIES, U.S., INC., et al., Plaintiffs,

v.

C J VAN HOUTEN E ZOON INC., Defendant.

MAISLIN INDUSTRIES, U.S., INC., et al., Plaintiff,

v.

QUEMETCO INCORPORATED, DIV R.S.R. CORPORATION, Defendant.

Bankruptcy Nos. 83–03161–R to 83–03163–R, 83–03165–R to 83–03167–R.

Adv. Nos. 85–0091–R, 85–0120–R.

United States Bankruptcy Court, E.D. Michigan.

July 10, 1985.

As Amended July 31, 1985.

Steven F. Alexsy, Detroit, Mich., David G. Sperry and Louis J. Wade, Kansas City, Mo., for Maislin Industries, et al.

John W. Bryant, Kevin N. Summer, Detroit, Mich., and Nathaniel H. Yohalem, Woodbridge, N.J., for C J Van Houten E Zoon, Inc.

Robert D. Schuler, Bloomfield Hills, Mich., and Thomas L. Cook, Dallas, Tex., for Quemetco Inc., div R.S.R. Corp.

## RECOMMENDATIONS REGARDING WITHDRAWAL AND DETERMINATION OF CORE STATUS

STEVEN W. RHODES, Bankruptcy Judge.

### I.

On July 11, 1983, the debtors (collectively referred to as "Maislin") filed petitions for reorganization pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101, *et seq*. Prior thereto, Maislin was engaged in the interstate and international transportation of freight, subject to the jurisdiction of the Interstate Commerce Commission. 49 U.S.C. § 10501 *et seq*. After filing, Maislin caused Carrier Credit & Collection, Inc. (CCC) to audit its pre-petition freight charges to determine whether Maislin's customers had paid the lawful rates published in its tariffs. 49 U.S.C. § 10701, *et seq*. CCC concluded that in the three years prior to July 11, 1983, C J Van Houten E Zoon Inc. had underpaid by $318,065.90 and that Quemetco Incorporated had underpaid by $150,848.28. Thus, Maislin filed these separate adversary proceedings to collect these underpayments.

In response, Van Houten filed a motion to withdraw pursuant to 28 U.S.C. § 157(d) or for a determination that the proceeding is not a core proceeding under 28 U.S.C. § 157(b). Quemetco filed a motion to dismiss 'in which it alternatively requested withdrawal pursuant to 28 U.S.C. § 157(d). Maislin opposes withdrawal in both cases.

Local Rule 33b. of the United States District Court for the Eastern District of Michigan requires the Bankruptcy Judge to make a recommendation concerning these motions.[1] These recommendations were joined because they involve the identical legal issue. Also, their joint consideration illustrates a crucial distinction which dictates that only one of the two cases should be withdrawn. Specifically it is recommended that Quemetco's motion be granted and that Van Houten's motion be denied.

28 U.S.C. § 157(d) provides in pertinent part:

> The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

### II.

#### A. *The Defendants' Contentions*

1. Van Houten contends that withdrawal of the reference of its adversary proceedings is required because resolution of Maislin's claim against it requires extensive consideration of the laws of the United States regulating organizations or activities affecting interstate commerce.

---

1. Local Rule 33b. provides in pertinent part:
   1. Motions
   (a) The Bankruptcy Judges shall make recommendations concerning:
   (iii) a motion by a party under 28 U.S.C. § 157(d) for withdrawal of reference of a case or proceeding, whole or in part, to a Bankruptcy Judge, and of a proceeding requiring consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

   (b) Any such motion shall be filed with the Bankruptcy Clerk and shall be first heard by a Bankruptcy Judge. The Bankruptcy Judge shall make a recommendation concerning the disposition of the motion, copies of which shall be mailed to the parties in accordance with the procedure set forth in subparagraph A3(b). The District Judge may accept, reject or modify, in whole or in part, the recommendation of the Bankruptcy Judge and shall determine the disposition of the motion.

Noting that Congress enacted § 157(d) to address concerns raised by the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Van Houten contends that this provision reflects Congress's intent that litigation concerning complex issues of federal law should be considered in their entirety by district courts with greater expertise in such areas.

Van Houten further contends that the interstate and international trucking industry, which is the subject of this proceeding, is subject to pervasive federal regulation and is governed by a significant body of federal law. Citing the legislative history of the mandatory withdrawal provision, Van Houten concludes that there would appear to be few industries with any greater potential for meeting the Senate's test of "immediately and directly" affecting interstate commerce. Therefore, Van Houten asserts that litigation concerning the trucking industry is precisely the type of proceeding which is required to be resolved exclusively by district courts under § 157(d).

Van Houten further contends that the fact that the plaintiffs are bankrupt entities satisfies the requirement of § 157(d) that withdrawal is mandatory only if resolution of the proceeding requires consideration of *both* Title 11 and federal interstate commerce laws. Van Houten maintains that consideration of some Title 11 issues is involved in any proceeding which is alleged to fall within the jurisdiction of the bankruptcy court pursuant to 28 U.S.C. § 1334.

2. Quemetco contends that the reference of its adversary proceeding must be withdrawn because resolution thereof requires consideration of both Title 11 and federal interstate commerce laws. Specifically, Quemetco contends that the case involves consideration of Title 11 issues because it has raised the defense of "extinguishment." Quemetco argues that Congress provided in 49 U.S.C. § 11706 that a common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission must commence a civil action for recovery of transportation charges within three years after the claim accrues. Quemetco maintains that at the end of this period, the right to recover is not merely barred, but extinguished. Quemetco contends that a claim related to a shipment of property accrues on delivery or tender of delivery by the carrier, and that those freight bills for which the plaintiff seeks to collect which were delivered prior to January 23, 1982, which was three years before this adversary proceeding was commenced, have been extinguished. *Axinn & Sons Lumber Co., Inc. v. Long Island Rail Road Company*, 466 F.Supp. 993 (E.D.N.Y.1978), *reh'g denied in part*, 518 F.Supp. 733 (E.D. N.Y.1978).

Quemetco contends that consideration of the Bankruptcy Code is required in light of Maislin's contention that 11 U.S.C. § 108 tolls the statutory period set forth in the Interstate Commerce Act.

3. Alternatively, the defendants have requested a determination that these proceedings are not core proceedings under 28 U.S.C. § 157(b)(3). The defendants contend that an action to collect accounts receivable is not a core proceeding, and that to construe such action to recover on a claimed contractual obligation as an action to turn over property of the estate or liquidate an asset of the estate would be contrary to the Supreme Court's holding in *Northern Pipeline*. *In re Atlas Automation, Inc.*, 42 B.R. 246 (Bkrptcy.E.D.Mich.1984).

B. *Maislin's Contentions*

Maislin contends that withdrawal of the reference to the bankruptcy court is not required because the issues presented by these adversary proceedings are clear, and do not require interpretation of federal interstate commerce statutes. In this regard, Maislin contends that settled law imposes an absolute duty on the defendants to pay the lawful joint rates and charges contained in tariffs lawfully on file with the Interstate Commerce Commission. *Louisville & Nashville Railroad Co. v. Maxwell*, 237 U.S. 94 (1915).

Maislin contends that an action to collect freight bills owing the estate is a "turnover

action" and thus a core proceeding under 28 U.S.C. § 157(b)(2)(E). *Calhoun, Trustee v. Copeland Corp.,* 51 B.R. 633 (Bkrptcy.W.D.Tenn.1985). Maislin distinguishes *In re Atlas Automation, Inc., supra,* on the grounds that the debts against Van Houten and Quemetco have matured, and the defendants are liable for the full amount of the tariff. Alternatively, Maislin contends that these cases can be categorized as proceedings "affecting the liquidation of assets of the estate" within the meaning of § 157(b)(2)(O).

With regard to policy considerations, Maislin contends that proceedings to bring accounts receivable into the estate are crucial to bankruptcy's prime objective of getting creditors paid. *Grayson-Robinson Stores, Inc. v. Securities & Exchange Commission,* 320 F.2d 940 (2nd Cir.1963). Further, Maislin contends that referring such matters to crowded District Court calendars or to the even greater backlogged state court system would greatly impair, if not defeat, the goals of rehabilitation and payment of creditors.

### III. *Withdrawal*

#### A. *Discussion*

■ The Court concludes that 28 U.S.C. § 157(d) does not require withdrawal of the reference when resolution of the proceeding requires consideration of only federal interstate commerce laws, *or* only the Bankruptcy Code; withdrawal is required only when resolution of the proceeding requires substantial consideration of *both.* This view of Section 157(d) finds overwhelming support in the statutory language and in the case law.

The statutory language is explicit in mandating withdrawal only when consideration of both laws is required. If Congress had intended to mandate withdrawal in every proceeding that involves consideration of the interstate commerce laws, it certainly could have so provided by omitting any reference to Title 11. Nevertheless the reference to Title 11 was included and must be given meaning.

In *In re Baldwin-United Corporation,* 47 B.R. 898, 899 (S.D.Ohio 1984), the court emphasized:

In order to come within the ambit of this provision of § 157(d), a movant must establish three predicates: First, the movant must be a party. Second, the motion must be timely. Third, resolution of the proceeding before the Bankruptcy Court must require consideration of both Title 11 *and* other laws of the United States regulating organizations or activities affecting interstate commerce. [Emphasis in original.]

*In re White Motor Corporation,* 42 B.R. 693 (N.D.Ohio 1984) adds an important gloss on the statute. There the Pension Benefit Guaranty Corporation moved to withdraw the reference of the proceedings concerning its claims, pursuant to 28 U.S.C. § 157(d), contending that resolution of the issues in the litigation involved consideration of both Title 11 and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.,* as amended by the Multiemployer Pension Plan Amendment Act of 1980. After extensive and detailed consideration of the legislative history of Section 157(d), the Court concluded that Section 157(d) "must be read to require withdrawal of the proceedings from the Bankruptcy Court only if this Court can make an affirmative determination that resolution of the claims will require *substantial and material* consideration of those non-Code statutes." [Emphasis added.] Because the court found that it was speculation whether the ERISA or IRC issues would actually arise, the court denied the motion to withdraw.

The holding of *In re White Motor Corporation* was followed in *Michigan Milk Producers Association v. Hunter,* 46 B.R. 214 (N.D.Ohio 1985). Therein the plaintiff filed an adversary complaint against the trustee to determine its rights as a secured creditor. In response, the trustee filed a counterclaim alleging that the supply agreement between the plaintiff and the debtor violated the Sherman Antitrust Act, 15 U.S.C. § 1. The court concluded that

the record supported an affirmative determination that resolution of the adversary proceeding required consideration of both the Bankruptcy Code and the Sherman Antitrust Act, and therefore granted the motion.

### B. *Van Houten*

■ In view of the statutory language, the above-cited cases, and legislative history cited and quoted therein, the Court must conclude that withdrawal of the adversary proceeding against Van Houten is not mandatory under 28 U.S.C. § 157(d). Resolution of that proceeding simply does not require substantial and material consideration of both the Bankruptcy Code and the Interstate Commerce Act. Van Houten has identified no issues under the Bankruptcy Code, and none are otherwise apparent.

■ As noted, Van Houten contends that Title 11 issues must be considered if only because the case is in bankruptcy court pursuant to 28 U.S.C. § 1334. This contention must be rejected because the mere fact that the case is in bankruptcy court does not mean that consideration of any Bankruptcy Code issue is necessary to the resolution of the case. Van Houten's contention essentially eliminates the statutory requirement that withdrawal is mandatory only when consideration of both laws is required, and accordingly must be rejected. The court in *White Motors* held that "substantial and material" consideration of the non-code laws is required, and there is nothing to suggest that any different level of consideration of the Bankruptcy Code is necessary for mandatory withdrawal.

**2.** 49 U.S.C. § 11706(a) provides:

A common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title must begin a civil action to recover charges for transportation or service provided by the carrier within 3 years after the claim accrues.

**3.** 11 U.S.C. § 108(a) provides:

If applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trus-

### C. *Quemetco*

■ On the other hand, resolution of Maislin's claim against Quemetco does require substantial and material consideration of the Bankruptcy Code and the Interstate Commerce Code. Specifically it has asserted that much of Maislin's claim is extinguished by 49 U.S.C. § 11706(a).[2] Maislin has responded that this period was tolled when the petition was filed, pursuant to 11 U.S.C. § 108(a).[3]

Thus, this case stands in contrast to *Maislin v. Van Houten* and *In re White Motors*, and is similar to *Michigan Milk Producers Association v. Hunter*. Accordingly, Quemetco's motion to withdraw must be granted.[4]

### IV. *Core Status*

The defendants have, in the alternative, requested a determination that the proceedings are not core proceedings. The Court agrees that these proceedings are not core proceedings under 28 U.S.C. § 157(b).

28 U.S.C. § 157 was enacted in the wake of the jurisdictional vacuum created by *Northern Pipeline*. *In re Pierce*, 44 B.R. 601 (D.C.Colo.1984). Specifically, sections (b) and (c) of this provision distinguish "core" proceedings, and limit the power of the bankruptcy judge in proceedings which are not core proceedings, absent consent of the parties.

■ Because the distinction is not always clear from the language of the statute, the determination of whether a proceeding is core can best be made in terms

tee may commence such action only before the later of—
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and
(2) two years after the order for relief.

**4.** It must be noted that Quemetco's defense of extinguishment has been raised in a motion to dismiss. If the district court determines that any part of Maislin's claim survives this motion, then the case could once again be referred to the bankruptcy court as resolution thereof would no longer require consideration of the bankruptcy code, and the case would then in all respects be similar to *Maislin v. Van Houten*.

of the principles underlying the *Northern Pipeline* decision.

In the *Northern Pipeline* case, Northern Pipeline, the debtor, filed suit against Marathon seeking damages for alleged breaches of contract and warranty, as well as for alleged misrepresentation, coercion, and duress. Northern Pipeline filed its contract claim in bankruptcy court. Marathon sought dismissal on the ground that the 1978 Bankruptcy Act unconstitutionally conferred Article III judicial power upon judges who lacked life tenure and protection against salary diminution.

In holding the grant of power unconstitutional, the Supreme Court rejected Northern Pipeline's argument that because the bankruptcy courts could have been constituted as legislative courts, the "adjunct" system chosen by Congress did not impermissibly encroach upon judicial power. The Supreme Court acknowledged that public rights, which must at a minimum arise "between the government and others," may be removed from Article III courts and delegated to legislative courts or administrative agencies for their determination. 458 U.S. at 69, 102 S.Ct. at 2870. The court found, however, that the substantive legal rights at issue in the case before it were not "public rights." Further, the court held:

> ... the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a "public right," but the latter obviously is not. Appellant Northern's right to recover contract damages to augment its estate is "one of private right, that is, of the liability of one individual to another under the law as defined." *Crowell v. Benson*, 285 U.S. [22] at 51 [52 S.Ct. 285, at 292, 76 L.Ed. 598]. 458 U.S. at 71–72, 102 S.Ct. at 2871–72.

After noting that the case before it involved "a right created by *state* law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court," the Court in *Northern Pipeline* held that Congress's authority to control the manner in which that right is adjudicated is accordingly at a minimum. 458 U.S. at 84, 102 S.Ct. at 2878.

In *In re Pierce, supra,* the debtor filed a complaint in bankruptcy court against the Airport Development Corporation (ADC) seeking injunctive relief for the alleged breach of a leasing contract. The court examined the plurality and concurring opinions in *Northern Pipeline* and concluded that a majority of six justices held that bankruptcy courts have no jurisdiction over state law contract disputes. The *Pierce* court held:

> Although the precise meaning of "core proceedings" will doubtless be the subject of much future litigation, it is clear that "core proceedings" do not encompass separate state law contract actions. A different construction would require explicit rejection of the *Marathon* mandate. 44 B.R. at 602.

In *In re Atlas Automation, Inc., supra,* the debtor commenced an action for a money judgment on an alleged account receivable. The defendant counterclaimed and demanded a jury trial. In determining that the proceedings were not core proceedings, Judge Spector considered the principles underlying *Northern Pipeline* and specifically addressed the contentions raised by Van Houten in this case. Judge Spector held:

> The complaint and the counterclaim are based on contract theories. Unless the Court were to read "orders to turn over property of the estate" or "other proceedings affecting the liquidation of the assets of the estate ..." to include collection of accounts receivable or actions for breach of contract, this case is not a "core proceeding" as defined by 28 U.S.C. § 157(b)(2). Although money due to a Chapter 11 debtor can certainly be described as "property of the estate" for which the plaintiff is requesting a "turn over" order, and although this is a "proceeding affecting the liquidation of the

assets of the estate" in that it is indeed an action to liquidate what at least the debtor perceives to be an asset, to wit: an account receivable, the Court cannot ignore the legislative intent behind the recent enaction of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353. In light of the fact that this statute was enacted in response to the Supreme Court's holding in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co., supra* and that that case involved an action similar in legal nature to the case at hand, i.e., a breach of contract action, it is doubtful that Congress intended this type of case to be tried by a bankruptcy court. Thus, although the perimeters of the definition of "turn over *property* of the estate" and "proceeding affecting the *liquidation* of the assets of the estate" are yet to be explored, they do not include actions of this type. Therefore, the Court, on its own motion, pursuant to 28 U.S.C. § 157(b)(3), determines that this case is a "proceeding that is otherwise related to a case under title 11." 42 B.R. at 247.

This authority suggests that these proceedings are non core.

*Calhoun, Trustee v. Copeland Corp., supra,* cited by Maislin, does not persuade the Court to hold otherwise. Therein, the issue was whether the bankruptcy court had primary jurisdiction over the trustee's action to recover outstanding transportation charges, and whether the action was an improper action for turnover of property under 11 U.S.C. § 542(b). The court determined that the dispute as to the existence of the debt, which concerned whether the defendant had been undercharged by application of the wrong tariff rate, did not prevent the debt from being "matured" within the meaning of § 542(b) since there was no claim that the duties under the contract had not been fully performed.

Whether the proceedings were core was not before the court in *Gordons Transports*. Therefore, the court did not examine the substance of the underlying transaction in light of the *Northern Pipeline* decision. *Cf. In re Atlas Automation, Inc., supra.*

Further, the Court must conclude that Maislin's claims involve rights independent of and antecedent to the petition that conferred jurisdiction upon this Court, and are not integral to the restructuring of debtor-creditor rights. Rather, the complaint is before this Court only because Maislin has filed a petition for reorganization in this Court. *Northern Pipeline, supra.*

For the above reasons, the Court must conclude that Maislin's actions to recover freight charges are not core proceedings.

### V. *Conclusion*

Accordingly, (1) it is recommended that Van Houten's motion to withdraw the reference be denied, and (2) it is recommended that Quemetco's motion to withdraw the reference be granted.

Further, the Court determines that Maislin's actions to recover freight charges are not core proceedings.