In re WORLD SOLAR CORPORATION, a California corporation, d/b/a World Energy Services, Debtor.

WORLD SOLAR CORPORATION, a California corporation, d/b/a World Energy Services, Plaintiff,

v.

Jerome STEINBAUM, Bruce Steinbaum, Keith Steinbaum, Karen Steinbaum, as individuals and as General Partners of Steinbaum Management Company, a/k/a SK Management Co., a California General Partnership, et al., inclusive, Defendants.

Bankruptcy No. 85–05897–H11.
Adv. No. C86–1004–H11.

United States Bankruptcy Court,
S.D. California.

Jan. 6, 1988.

Karl H. Griesbaum, Karl H. Griesbaum & Associates, Inc., La Jolla, Cal., for plaintiff.

Bruce G. Landau, Martha M. Hernandez, Rosky, Landau & Fox, Beverly Hills, Cal., William M. Rathbone, Weeks, Willis, Rathbone & Johnson, San Diego, Cal., for defendants.

## AMENDED MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

### I.

This matter comes before the court upon the motion of the debtor for leave to amend its complaint in the adversary proceeding filed herein against SK Management Co., et al. ("SK Management"), pursuant to Fed.R. Civ.P. 3, and defendants' cross-motion for abstention pursuant to 28 U.S.C. § 1334(c)(2). The issues raised by the parties and addressed herein are as follows:

(1) Whether Fed.R.Civ.P. 15(a) gives the plaintiff the right to amend its complaint in a multiple party action, when a co-defendant, who has been subsequently dismissed, has filed a responsive pleading.

(2) Whether a co-defendant's filing an answer to plaintiff's complaint constitutes consent to this court's jurisdiction which binds all other defendants.

(3) Whether the facts herein *require* the court to abstain pursuant to 28 U.S.C. § 1334(c)(2); most notably

  (a) Whether a case must be pending in a state court; and

  (b) Whether this matter may be timely adjudicated.

(4) Whether the court should discretionarily abstain pursuant to 28 U.S.C. § 1334(c)(1).

This court has jurisdiction to hear these matters pursuant to 28 U.S.C. § 1334 and § 157 and General Order No. 312–D of the United States District Court, Southern District of California.

### II.
### FACTS

In 1983, plaintiff/debtor World Solar Corporation ("World Solar") began contracting with a number of project owners for rooftop leases to permit the installation

of Federal Housing and Urban Development ("HUD") approved, regulated and subsidized solar heating equipment in various low income apartment housing units. According to HUD regulations, World Solar was to receive compensation for these services in accordance with HUD guidelines and HUD approved contracts entered into with the project owners. As part of these guidelines, the project owners were required to contract with a HUD approved management company to collect the utilities fees from the individual tenants who rented apartments from the project owners. The HUD approved management company would in turn pay World Solar its contract fees under the terms of the contract with the project owners.

For the first year, SK Management paid the amounts due under the contract. Thereafter, SK Management unilaterally determined that there was an ambiguity in the contract and that no further payments were due World Solar for the next eleven months. Thereafter, no payments were made by the project owners for eleven months. Subsequently, SK Management unilaterally established a revised billing formula which World Solar claimed was in breach of the contract and HUD regulations.

World Solar filed a petition under Chapter 11 of the Bankruptcy Code on November 11, 1985. On December 23, 1986, World Solar filed the instant adversary proceeding for breach of contract, interference with contractual relations, interference with prospective economic advantage and bad faith breach of contract. World Solar granted the defendants (SK Management and the successors in interest to the project owners) an open extension to answer the complaint in the adversary proceeding. One of the co-defendants filed an answer on February 5, 1987 and commenced discovery. That co-defendant joined defendants' motion for abstention, but was subsequently dismissed with prejudice by agreement with World Solar. To date, no action in state court has been filed.

## A. FED.R.CIV.P. 15(a)

■ World Solar seeks leave of the court to amend its complaint by adding the successors in interest to the original defendants with whom World Solar initially contracted. Under Fed.R.Civ.P. 15(a), the court has discretion to permit a party to amend its pleadings when justice requires. However, where there is good reason for denial, the court may refuse to grant leave to amend. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Permission to amend is only granted when the amendment is not a frivolous and dilatory measure and where it is made in good faith. *Johnson v. Helicopter & Airplane Service Corp.*, 389 F.Supp. 509, 514 (1974).

■ Under the circumstances, World Solar's motion to amend its complaint to add the successors in interest to the original contracting parties is neither frivolous nor made in bad faith. While these defendants may not be parties to the original contract, it is as yet undecided whether they can be held liable thereunder. Defendants' argument that they should not be compelled to litigate the claims made by World Solar before this court is irrelevant in determining whether to grant World Solar leave to amend its complaint.

## B. CONSENT TO JURISDICTION UNDER § 157(c)(2)

■ Section 157(c)(2) of Title 28 states that, "the district court with consent of all the parties to the proceeding, may refer [a non-core proceeding] to a bankruptcy judge...." World Solar argues that because one of the co-defendants has answered the complaint, that all the defendants are somehow bound by the actions of this co-defendant. Clearly, however, § 157(c)(2) refers to the consent of all parties by its plain language, not just some of the parties.

Further, the court in *Matter of Baldwin–United*, 48 B.R. 49 (Bankr.S.D.Ohio 1985) states that, "consent under § 157(c)(2) may be express; it may be implied from [failure to make a timely] objection to the bankruptcy court's jurisdiction; or it may be implied from any act which indicates a will-

ingness to have the bankruptcy court determine a claim or interest." In the instant case, there is no evidence of expressed consent by defendants. As discussed below, in Part C.1., there has not been a failure to make a timely objection to jurisdiction. Finally, defendants' limited appearance to object to jurisdiction cannot be considered as an expression of implied consent. Therefore, the answer of one party cannot be construed as the consent of all other parties to this court's jurisdiction.

## C. MANDATORY ABSTENTION

Defendants contend that this court must abstain from hearing plaintiff's claim pursuant to 28 U.S.C. § 1334(c)(2). Section 1334 was enacted by Congress in the wake of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which held that 28 U.S.C. § 1471, the predecessor to § 1334, unconstitutionally conferred jurisdiction upon the Bankruptcy Court to decide certain matters involving state law claims. § 1334(c)(2) provides in pertinent part:

> Upon timely motion of a party in a proceeding based upon a state law claim or state law cause of action, related to a case under Title 11 ... but not arising under Title 11 ... or arising in a case under Title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the District Court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

As can be seen from the statute, mandatory abstention requires seven elements: (1) A timely motion; (2) a purely state law question; (3) a non-core proceeding § 157(c)(1); (4) a lack of independent federal jurisdiction absent the petition under Title 11; (5) that an action is commenced in a state court; (6) the state court action may be timely adjudicated; (7) a state forum of appropriate jurisdiction exists.

World Solar argues that none of the first six elements necessary for mandatory abstention exist and therefore mandatory abstention is not proper. Each of these elements is discussed in turn.

### 1. *Timely Motion:*

■ World Solar claims that because defendants waited six months before filing their motion for mandatory abstention that the motion is untimely. The timeliness of answers and of motions is governed by Fed.R.Civ.P. 6 and Bankr.R. 7012, respectively. Fed.R.Civ.P. 6(d) provides in pertinent part that, "a motion ... and notice of the hearing thereof shall be served not later than five days before the time specified for the hearing, unless a different period is fixed by these rules." Bankr.R. 7012 allows thirty days for the filing of an answer to a complaint or objection to jurisdiction *inter alia*. (Bankr.R. 7012 incorporates Fed.R.Civ.P. 12(b)–(h)). However, since World Solar granted an open extension of time to defendants to file their answers, these time limits cease to apply.

While it is possible that too great a delay in and of itself might be grounds for deeming that a party has consented to the jurisdiction of the bankruptcy court by its failure to file a timely motion for abstention, such is not the case here. In the interim, between World Solar's filing of its first adversary proceeding and defendants' motion for abstention, World Solar granted an open extension to the defendants, during which time settlement negotiations were conducted. World Solar subsequently moved to amend its complaint on May 22, 1987, some five months after the initial complaint was filed. Only then, on June 9, 1987, did defendants make their motion for mandatory abstention. These facts present evidence not of a willful delay or neglect, but of good faith settlement negotiations, followed by a reposturing into a litigation mode. While it is unfortunate that the parties could not settle, in light of the policy favoring out of court resolution of disputes, the defendants should not be prejudiced by their election to pursue a non-judicial resolution. Under the circumstances, not pressing the abstention motion sooner

reflects a course of non-antagonistic behavior conducive to settlement, not an untimely filing.

### 2. *State Law Issue Requirement:*

■ World Solar next contends that the subject matter of the adversary proceeding does not raise state law issues. Rather, it contends that because the contracts with the defendants have been entered in conjunction with a HUD project and are subject to HUD requirements, interpretation of these contracts is a federal question.

The district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. However, this case does not present a federal question. In *Jemo Associates Inc. v. Green Metropolitan Housing Authority*, 523 F.Supp. 186 (D.C.Ohio, 1981), the plaintiff alleged a breach of contract by HUD and the local housing authority. The court in *Jemo* held that when an action would usually be governed by state law, a federal question was not present even though HUD was a party and resolution of the dispute might involve interpretation of federal regulations. 523 F.Supp. at 189.

### 3. *Non–Core Proceeding:*

■ World Solar contends that the adversary proceeding is a core proceeding. Therefore, World Solar contends that this proceeding cannot be considered as "related to a case under Title 11" as required for mandatory abstention pursuant to § 1334(c)(2).

Core proceedings, involving cases arising under Title 11 or cases under Title 11, are defined without limitation by 28 U.S.C. § 157(b)(2). Section 157(b)(1) allows the bankruptcy judge to hear and determine all cases under Title 11 and all core proceedings arising under Title 11 or arising in a case under Title 11 referred by the district court under § 157(a); and to enter appropriate orders and judgments. By contrast, § 157(c)(1) allows a bankruptcy judge to hear proceedings which are not core proceedings, but which are related to a case under Title 11, but must submit findings of fact and conclusions of law to the district court. The bankruptcy judge does not have the power to enter orders or judgments in non-core proceedings.

Section 157(b)(2) contains a non-exclusive "laundry list" of proceedings which fit under the definition of core proceeding. World Solar contends that the instant adversary proceeding falls under several of the listed core proceeding types. Specifically, World Solar states that the adversary proceeding can be classified as either a matter concerning the administration of the estate (§ 157(b)(2)(A)); an order to turnover property of the estate (§ 157(b)(2)(E)); or a proceeding affecting the liquidation of the assets of the estate or the adjustment of debtor-creditor or the equity security holder relationship … (§ 157(b)(2)(O)). However, these sections, as well as the rest of the list, clearly refer to rights conferred by various sections of the Bankruptcy Code, not to garden variety contract disputes between the debtor and its account debtors.

### a. *Matters Concerning the Administration of the Estate.*

The first argument made by World Solar is that the adversary proceeding may be classified as a matter concerning the administration of the estate. 28 U.S.C. § 157(b)(2)(A). In support of this argument, debtor suggests that *In re Baldwin–United Corp.*, 48 B.R. 49 (Bankr.S.D.Ohio 1985) supports the proposition that the collection of debtor's accounts receivable constitutes an action involving the administration of the estate. *Baldwin*, however, involved an adversary claim for turnover of property of the estate by the debtor-in-possession and counterclaims by the defendant. In the instant action, the dispute consists not of conceded accounts receivable and counterclaims, but of a genuine dispute as to the terms of the contracts between the parties. Furthermore, courts have rejected the approach adopted in *Baldwin*, because it turns

> mere allegation into fact[.] [B]y asserting that the money attributable to an account receivable is property of the es-

tate, a debtor could, under the foregoing authorities, establish the constructive possession necessary for the bankruptcy court to exercise jurisdiction. Unless there is no question remaining as to the liability of the defendant to the estate ... it cannot be said that no dispute exists, and the money debtor seeks to recover is not within the debtor's constructive possession.

*Satelco v. North American Publishers,* 58 B.R. 781, 786 (Bankr.N.D.Tex.1986); *In re Northeast Dairy Co–Op Federation, Inc.,* 72 B.R. 663, 676 (Bankr.N.D.N.Y.1987); *In re Nell,* 71 B.R. 305, 308 (D.Utah 1987).

■ Determining whether a proceeding is a core proceeding or a non-core proceeding requires the court to analyze various causes of action raised by the parties and make a finding that they sufficiently effect the debtor-creditor relationship so as to justify issuance of a final order. *Matter of Wood,* 825 F.2d 90, (5th Cir.1987); *In re World Financial Services Center, Inc.,* 64 B.R. 980, 984–87 (Bankr.S.D.1986). In the instant action, World Solar's causes of action include breach of contract, declaratory relief (for interpreting the contract terms), interference with prospective economic advantage and bad faith breach of contract. Each of these causes involve rights which are independent of and antecedent to the petition which conferred jurisdiction upon this court and are not integral to restructuring of debtor-creditor rights. *In re Maislin Industries,* 50 B.R. 943 (Bankr.E. D.Mich.1987). Breach of contract and tortious interference claims will affect the debtor-creditor relationship and the results of such litigation will potentially affect debtor's liquidation of assets and augment its estate. However, when these issues depend on state law for their resolution and are matters which, but for the intervention of bankruptcy, could have been brought in state court, they are not core proceedings. *In re Bokum Resources Corp.,* 49 B.R. 854 (Bankr.D.N.M.1985).

b. *Orders to Turnover Property of the Estate.*

World Solar next argues that the adversary proceeding can be classified as an order to turnover property of the estate. 28 U.S.C. § 157(b)(2)(E). In support of this argument, World Solar once again points to *Baldwin* for the proposition that the instant action constitutes a turnover proceeding. In this respect, World Solar's reliance on *Baldwin* is misplaced. As the court in *Baldwin* stated, "the words 'to turnover property of the estate' are terms of art in the bankruptcy context (*cf. U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)) and their use by Congress evinces an intention to include all proceedings brought pursuant to 11 U.S.C. § 542 as core proceedings."

In the instant action, World Solar makes no claim pursuant to § 542. Section 542(b) refers to a debt which is matured, payable on demand, or payable on order. This type of action is clearly inconsistent with the actions brought by World Solar in its adversary proceeding.

■ In determining the nature of a proceeding for purposes of determining core status, the court must look to both the form and the substance of the proceeding. *Matter of Wood,* 825 F.2d at 97; *In re World Financial Services Center, Inc.,* 64 B.R. at 984–87.

c. *Other Proceedings Affecting the Liquidation of Assets, etc.*

World Solar also argues that the adversary proceeding is a core proceeding pursuant to § 157(b)(2)(O). Section 157(b)(2)(O) refers to "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship...." This section is the catch-all provision of § 157(b)(2), into which all other possible core proceedings should fit. While there have been cases holding that a breach of contract action is a core proceeding pursuant to § 157(b)(2)(O) (*See, e.g., Cotton v. Shirah,* 49 B.R. 926 (Bankr.N.D.Ga.1985), the more well reasoned opinions have held that a breach of contract action cannot be characterized as falling under § 157(b)(2)(O) (*Mohawk Industries, Inc. v. Robinson Industries, Inc.,* 46 B.R. 464

(D.Mass.1985); *Morse Electric Co. v. Logicon Inc.*, 47 B.R. 234 (Bankr.N.D.Ind. 1985)), since that would eradicate the underpinnings of *Marathon*. 1 *Colliers on Bankruptcy*, para. 3.01, pp. 3–44 (15th ed. 1987). In *Piombo Corp. v. Castlerock Properties*, 781 F.2d 159 (9th Cir.1986), the Ninth Circuit stated that, "[s]tate law and contract claims that do not specifically fall within the categories of core proceedings enumerated under § 157(b)(2)(B) through (N) are not related proceedings even if they arguably fit within the literal wording of the catch-all provisions of § 157(b)(2)(A) and (O)." 781 F.2d at 162.

For the same reasons as stated in the proceeding paragraph, World Solar's claim that the instant action is a core proceeding because there is a sufficient nexus between the proceeding and the bankruptcy estate is also rejected. The case from which this language was taken was attempting to find words by which to characterize the holding in *Marathon*. *In re Lion Capital Group*, 46 B.R. 850, 856 (Bankr.S.D.N.Y.1985). However, *Lion Capital* (which held that a suit by a partnership trustee to enforce cash call obligations of limited partners which arose prior to bankruptcy was a core proceeding) is considered to be incorrectly decided by most authorities. *See*, 1 *Colliers on Bankruptcy*, para. 3.01, pp. 3–44 (15th ed. 1987); *Matter of Century Brass Products, Inc.*, 58 B.R. 838 (Bankr.D.Conn. 1986) (holding that claims on accounts receivable and related counterclaims were not core proceedings).

### 4. Lack of Independent Jurisdiction:

Another of the essential elements for mandatory abstention under § 1334(c)(2) is that the action could not have been commenced in federal court but for the filing of bankruptcy. *In re S.E. Hornsby & Sons Sand & Gravel Co., Inc.*, 45 B.R. 988, 996 (Bankr.M.D.La.1985). World Solar claims that this court has independent jurisdiction to hear this adversary proceeding because it involves questions of federal law. 28 U.S.C. § 1331(a). In support of this claim, World Solar states that, "the pivotal issue of this case will be the determination of the [correct interpretation] of

the HUD regulations on solar heating installation [contracts]." However, as previously stated in Part C.2. of this opinion, the court in *Jemo Associates Inc. v. Green Metropolitan Housing Authority*, 523 F.Supp. 186 (D.C.Ohio 1981) held that breach of contract actions which involve interpretation of HUD regulations are not federal questions. 523 F.Supp. at 189.

### 5. Action Commenced in State Court:

█ The next element of § 1334(c)(2) derives from the words "if an action is commenced...." At issue is whether a state court action must be pending at the time when the mandatory abstention motion is considered. The majority of cases to have considered this issue have held that a pending state court action is a prerequisite for mandatory abstention. *Taxel v. Commerce Bank*, 64 B.R. 980 (Bankr.S.D.Cal. 1986); *Ram Construction Co. v. Port Authority of Allegheny County*, 49 B.R. 363 (W.D.Pa.1985); *Bracher v. Continental Illinois National Bank & Trust Company*, 50 B.R. 232 (Bankr.D.Colo.1985); *Matter of Boughton*, 49 B.R. 312 (Bankr.N.D.Ill. 1985); *Matter of Climate Control Engineers, Inc.*, 51 B.R. 359 (Bankr.M.D.Fla. 1985). However, all the early cases which held that a pending state court action was a prerequisite for mandatory abstention rely on either *S.E. Hornsby & Sons Sand & Gravel Co.*, 45 B.R. 988, 996 (Bankr.M.D. La.1985) or one another as support for the pending state court action prerequisite.

In *S.E. Hornsby*, the Chapter 11 trustee filed an adversary action for an order to require the shareholder of the corporate debtor to turnover to the debtor any assets of the debtor in the shareholder's possession or control. In considering whether to abstain, the court in *S.E. Hornsby* recited the following prerequisites:

A. A timely motion is made;

B. The proceeding is based upon a state law claim or state law cause of action;

C. The proceeding is related to a case under Title 11;

D. The proceeding does not arise under Title 11;

E. The proceeding does not arise in a case under Title 11;

F. The action could not have been commenced in a court of the United States absent jurisdiction under 28 U.S.C. § 1334; and

G. *An action is commenced and can be timely adjudicated* in a state forum of appropriate jurisdiction. (Emphasis added).

*S.E. Hornsby,* 45 B.R. at 996.

Requirement G of the *S.E. Hornsby* list is a verbatim restatement of § 1334(c)(2)'s wording, as is the rest of the list, for the most part. The pivotal factual issue in *S.E. Hornsby* appears to have been whether the matter could be timely adjudicated in state court. On this question, the court found

> abstention is required *only if an action is commenced and can be timely adjudicated in a state forum of appropriate jurisdiction* to determine the issues involved. In this case a state law dispute was filed in July of 1983 and had made absolutely no progress through and including the date of the filing of this petition. Even some months subsequent to the filing of the bankruptcy petition the state law liquidator indicated that he had no interest in pursuing the case. The court can find no evidence to sustain an allegation that *an action can be timely adjudicated in a state forum of appropriate jurisdiction.* (Emphasis added).

*S.E. Hornsby,* 45 B.R. at 996.

The court makes no further analysis of § 1334(c)(2) in this section of its opinion. However, the court states in the summary portion of its opinion that "the mandatory abstention provision of 28 U.S.C. § 1334(c)(2) does not apply since this is a proceeding arising under Title 11 and because it appears that *it is not possible to commence an action in state court that can be timely adjudicated." S.E. Hornsby,* 45 B.R. at 998. (Emphasis added). The

clear implication of this language is that, *inter alia,* if it were possible to commence a state court action which could be timely adjudicated, then mandatory abstention would be appropriate. In comparing the former and latter passages of *S.E. Hornsby,* the former clearly appears to be a recitation of the statute, while the latter appears to be analysis of its meaning. Therefore, subsequent courts' reliance on *S.E. Hornsby* as authority for the prerequisite of a pending state court action must be considered suspect at best.

*S.E. Hornsby* by no means stands alone on the issue of whether a pending state court action is a prerequisite for mandatory abstention. The court in *In re Dakota Grain Systems,* 41 B.R. 749 (Bankr.D.N.D. 1984), while recognizing that mandatory abstention did not apply because the instant adversary proceeding had been filed prior to § 1334's effective date, concluded that

> [a]bstention is mandatory under [§ 1334(c)(2)] where the case is: (1) based upon a state law claim or cause of action which although related to a Title 11 case did not arise under Title 11 or out of a Title 11 case and, (2) the case could not have been commenced in federal court absent the fact of a bankruptcy petition and, finally, (3) *if the case were commenced in a state court it could be timely adjudicated.*

*Dakota Grain Systems,* 41 B.R. at 750. In another early case which considered the pending state court action question, *State Bank of Lombard v. Chart House,* 46 B.R. 468 (N.D.Ill.1985), the district court, quoting *Dakota Grain Systems,* found that "§ 1334(c)(2) mandates abstention in matters that *would have been filed in state court* rather than federal court but for a bankruptcy filing."[1] *Chart House,* 46 B.R. at 471; *Dakota Grain Systems,* 41 B.R. at 750. (Emphasis added). The courts both in *Dakota Grain Systems* and

---

1. *Chart House* was a district court case decided three and one-half months prior to *Matter of Boughton,* one of the leading cases for the proposition that a pending state court action is a prerequisite for mandatory abstention. *Bough-* ton was decided by a bankruptcy court in the same district as *Chart House.* Therefore, it appears that the court in *Boughton* was either unaware of, or chose to ignore the decision of a higher court on this issue.

*Chart House* clearly imply that a pending state court action need not be filed prior to a motion for mandatory abstention. (A number of other courts, while accepting a pending state court action as an element for consideration in determining whether or not to mandatorily abstain, have concluded that this element is not dispositive in deciding whether or not to abstain. *See, In re Illinois–California Express, Inc.*, 50 B.R. 232, 241 (Bankr.D.Colo.1985); *In re Arnold Printworks*, 61 B.R. 520, 526 (D.Mass. 1986); *In re P & P Oil Fields Equipment, Inc.*, 71 B.R. 621, 623 (Bankr.D.Colo.1987)).

After considering the case law in support of the pending state court action prerequisite and finding it to be highly suspect at best, this court analyzed several other relevant sources. This court's review of the legislative history proved to be inconclusive, although it did seem clear that if a pending state court action was a prerequisite in the individual or collective minds of Congress, they failed to give any indications in support thereof. This court also took into consideration the potential for forum shopping created by a pending state court action prerequisite. A debtor with an action which accrues immediately prior to or subsequent to the filing of a bankruptcy petition could preclude state courts from hearing *Marathon* type cases (unless the bankruptcy court was willing to exercise its discretion to abstain under § 1334(c)(1)) simply by filing an adversary proceeding in the bankruptcy court. This court also balanced into its consideration what the Ninth Circuit has recognized as "a clear congressional policy ... to have state law claims heard in state court." *In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir. 1986).

The most persuasive factor this court found was Professor Walter J. Taggart's well reasoned analysis of the impact of the Bankruptcy Amendments and Federal Judgeship Act of 1984. Taggart, *The New Bankruptcy System*, 59 Am.Bankr.L.J. 231 (1985).

(i) *Commencing the State Action.* The Senate version of § 1334(c)(2) required that state court action "has been or will be instituted." The House language "is commenced," was adopted by the Conference Committee. The use of "is commenced" seems to suggest that it is necessary to simultaneously file the motion to abstain and the state court action. The better solution is to hear the abstention motion and, if abstention is otherwise required, to enter a conditional abstention order which provides that a state court action must be commenced within a fixed time. This will bring the abstention practice into conformity to practice of the federal courts under the *Pullman* abstention doctrine.[2]

If this suggested procedure is accepted, the question remains as to which party must bring the state court action. Under the *Pullman* abstention doctrine the federal plaintiff is forced to present the state law component of the federal constitutional issue to the state court.[3] Once the state adjudication is obtained, the plaintiff returns to the federal court. If the abstention doctrine of *Younger v. Harris*[4] is successfully invoked, the federal action is dismissed in deference to a pending state criminal action against the plaintiff in the federal action.

Neither of these situations quite fits the common bankruptcy abstention situation. Abstention under § 1334(c)(2) is really dismissal of the action; but frequently the defendant in the bankruptcy litigation did not have any action pending before the case under the Code was filed and the stay precludes the initiation of an action. Moreover, the defendant may not have an affirmative claim against the

**2.** *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). See 1A, part 2, J.W. Moore, *Moore's Federal Practice*, para. 0.203 (1977). (Footnote from author's text).

**3.** *England v. Louisiana School Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). (Footnote from author's text).

**4.** 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). See, 17 Wright, Miller & Cooper, Federal Practice and Procedure § 4215 (1978). (Footnote from author's text).

estate and the only possible state court action that could be commenced would be a declaratory judgment action. The stay of § 362(a) of the Code probably would not preclude initiation of such a declaratory judgment action.[5] Nevertheless, the policy of leaving *Marathon* claims to the state courts supports the conclusion that the appropriate approach is to require the trustee to initiate the state action, provided the defendant submits to jurisdiction in a state court which is convenient to the trustee.

59 Am.Bankr.L.J. at 255–56.[6]

This court therefore concludes that a pending state court action is not a prerequisite for mandatory abstention. Rather, the court must decide whether such an action can be filed on a timely basis in a state court of appropriate jurisdiction. This outcome is supported by the *Pullman* doctrine, Professor Taggart's article, and, most notably, what this court finds to be the initial misreading of *S.E. Hornsby* by subsequent cases treating *S.E. Hornsby* as authoritative, which was responsible for those subsequent cases holding that a pending state court action was a prerequisite for mandatory abstention.

### 6. *Timely Adjudicated:*

The final element required for mandatory abstention which World Solar claims is not satisfied is that the matter "may be timely adjudicated" in state court. Clearly, this is a matter of judicial discretion, although the congressional policy to have state law claims heard in state court cannot be overlooked. *In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir.1986).

In this regard, the court requested additional evidence from the parties. World Solar contends that if it is forced to proceed in California Superior Court, it will

take from three to five years to have the matter come to trial. World Solar further contends that several different actions in the various Los Angeles County Superior Court divisions will be necessary. SK Management argues that whether the matter is a short cause and in which division the matter is filed, among other factors, will weigh heavily on the time it takes to get to trial. Therefore, SK Management asserts that some of the trials could be heard in as little as two and one-half years.

In deciding whether a matter may be timely adjudicated, perhaps the single most important factor is the nature of the underlying chapter proceeding. In a Chapter 7 proceeding, the primary concern of the court is the orderly accumulation and distribution of the assets of the estate. There is no administrative urgency or plan of reorganization to facilitate. In an adversary proceeding related to a Chapter 7 proceeding, timely adjudication can be weighed relatively lightly. By contrast, where a Chapter 11 reorganization is pending, the court. must be sensitive to the needs of the debtor attempting to reorganize. Lengthy delays in collecting outstanding accounts or resolving other claims which might substantially enhance the viability of the estate, may prove fatal to reorganization efforts. Therefore, in considering whether or not to abstain, timely adjudication necessarily weighs heavily for a Chapter 11 debtor.

In the case at bar, World Solar is a Chapter 11 debtor attempting to collect substantial contract arrearages from a number of account debtors. The possibility of prosecuting a multiplicity of suits in various Los Angeles County Superior Court divisions and the potential for protracted litigation could possibly be too

---

**5.** The last sentence of § 1334(c)(2) appears to exempt actions brought in connection with abstention motions from the stay of § 362 of the Code. The stay would otherwise remain effective and preclude enforcement of any judgment obtained in the state action. (Footnote from author's text).

**6.** While this court recognizes that the *Pullman* and *Younger* doctrines are judicially created

and that § 1334(c)(2) is a statutory mandate, to the extent that an ambiguity exists in the statute and case law it seems appropriate to weigh other abstention practices as additional evidence regarding a proper interpretation of the portion of the statute relating to whether a pending state court action is necessary prior to consideration of a motion for mandatory abstention.

great a burden for the debtor to bear. Rather than endangering the reorganizational efforts of the debtor, this court finds that the bankruptcy court is the appropriate place for these matters to be heard. The accelerated calendar will afford the debtor the opportunity to bring this case to trial within a year. Therefore, because this matter cannot be timely adjudicated in state court and because this is a Chapter 11 proceeding, mandatory abstention is not appropriate in the instant proceeding.

## D.  DISCRETIONARY ABSTENTION.

■ Section 1334(c)(1) allows the court to abstain from hearing non-core proceedings *inter alia,* in the interest of justice, or in the interest of comity with state courts or with respect to state law. It is well settled that the bankruptcy court may abstain where the issues presented to the court involve solely questions of state law. *In re Franklin Press, Inc.,* 46 B.R. 523 (Bankr.S.D.Fla.1985); *In re American Manufacturing Technologies, Inc.,* 60 B.R. 645 (Bankr.S.D.Cal.1986). Several criteria have been proposed by courts as factors which should be weighed in deciding a question of discretionary abstention. In *Allen County Bank & Trust Co. v. Valvmatic International Corp.,* 51 B.R. 578 (Bankr.N.D.Ind.1985), the court stated:

> A court considers several factors in deciding whether [to abstain], among which are: (1) duplication of judicial resources; (2) uneconomical use of judicial resources; (3) effect of [abstention] on the administration of the bankruptcy estate; (4) case involves questions of state law better addressed by a state court; (5) comity considerations; (6) prejudice to the involuntarily [affected] parties; (7) lessened possibility of an inconsistent result; and (8) expertise of the court where the action [must thereafter be decided]. *Baren v. Devon Bank,* 47 B.R. 39, 42–3 (Bankr.N.D.Ill.1984) *aff'd and adopted* 48 B.R. 752 (N.D.Ill.); *In re Butcher,* 46 B.R. 109, 113–14 (Bankr.N.D.Ga.1985).

51 B.R. at 582.

This case involves non-core proceedings over which this court would be limited to making proposed findings of fact and conclusions of law. This court may not, however, make a final determination herein. Final determinations of non-core proceedings are left to the district court, with the parties having the right to request *de novo* review over all matters to which they timely and specifically object. 28 U.S.C. § 157(c)(1). While this court is mindful of the potential for duplication of efforts between this court and the district court, this court holds that discretionary abstention is not appropriate. As discussed above, the primary purpose of the bankruptcy court in Chapter 11 reorganization proceedings is to aid the debtor in effectuating a plan of reorganization. Subsumed in this effort to effectuate a plan is the premise that reorganization will best benefit the creditors. When, as here, the debtor's survival may depend on swift determination of claims against its account debtors, the bankruptcy court must facilitate the expedient adjudication of such claims.

## CONCLUSION

World Solar's motion to add additional defendants is neither frivolous nor made in bad faith. SK Management has not impliedly consented to this court's jurisdiction. The nature of World Solar's complaint is neither a core proceeding nor a federal question. However, the nature of the underlying Chapter 11 reorganization requires that World Solar's adversary proceeding be heard in an expedited fashion. Therefore, it is in the best interest of World Solar and the creditors for this court not to abstain from hearing the instant action.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankr.R. 7052. Counsel for the debtor is directed to file with this court an Order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.