**In the Matter of Steve Edward BODNAR, Debtor.**

**Bankruptcy No. 81–03303.**

United States Bankruptcy Court, N.D. Alabama, S.D.

Jan. 10, 1985.

Walter W. Furner, Jr., Homewood, Ala., for debtor.

Maurice Rogers, Birmingham, Ala., for Iron & Steel Workers Credit Union.

John P. Whittington, Birmingham, Ala., Trustee.

Jack Rivers, Birmingham, Ala., U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

STEPHEN B. COLEMAN, Bankruptcy Judge.

Steve Edward Bodnar filed a voluntary petition under Chapter 7 on June 3, 1981, in

which he, in Schedule A, listed Iron and Steel Workers Credit Union as a secured creditor on one 1975 Ford car. He also scheduled, as an unsecured creditor, Janet Coggins with a judgment for $11,668. No claims were filed, no non-exempt assets were scheduled, and John P. Whittington, the Trustee, filed a No-Asset Report on August 7, 1981, listing the perfected security interest of Iron and Steel Workers Credit Union on the 1975 Ford Elite which was abandoned with a value of $1500. In due course, and on the 25th day of June, 1982, the Debtor was given his discharge in bankruptcy with no exceptions.

Thereafter, a Motion to re-open the case was filed on October 17, 1984, which recited "The Iron & Steel Workers Credit Union has recorded a judgment in the District Court of Jefferson County, Case No. DV 79–07911 for the very same debt as was listed in petitioner schedule of creditors. A copy of the Certificate of Judgment was recorded in the Probate Court on January 25, 1980 at Real 1872 at Page 9. WHEREFORE, Petitioner requests this Honorable Court under the provisions of § 522F to have the above said judgment and recording declared null and void." This Motion was set for hearing on the 13th day of November, 1984, and an Order entered re-opening the case upon the payment of a filing fee of $60.

Thereupon this matter, after the re-opening of the case, was set for hearing on January 7, 1985, upon the Motion of the Debtor to have "judgment of Iron & Steel Workers Credit Union set aside." The Debtor attempted to file a pleading styled "Bill to Quiet Title" but this was withdrawn and never re-filed.

After discharge granted, Steve Edward Bodnar purchased real estate which he now occupies as a home. He obtained a title policy from American Title Insurance Company which reflected a judgment obtained and recorded prior to bankruptcy in favor of Iron and Steel Workers Credit Union. Before American Title Insurance Company would issue a policy insuring the title of Steve Edward Bodnar, the title company required him to post with them $5,000 cash in lieu of a bond, on the assumption and theory that the judgment of Iron and Steel Workers Credit Union and/or judgment of Janet Coggins were valid or potential liens on the real estate acquired by the Debtor post-petition and after bankruptcy.

The purpose of this hearing was to ascertain and declare the validity of such reputed liens and whether they actually exist and survived bankruptcy to the extent that they constitute an encumbrance or a cloud on the title of Steve Edward Bodnar in the real estate described in the title policy and acquired by Debtor after bankruptcy. Notice and process was issued to the said Iron and Steel Workers Credit Union in care of its attorney of record, Maurice Rogers, who did not appear, defend, or file an answer asserting any lien or claim against the real estate involved in this hearing. They have made no appearance in this case.

The real purpose of the Debtor is to recover the deposit, with interest, made with American Title Insurance Company, upon a judicial determination that no such judgment liens existed against the property of Steve Edward Bodnar.

The Alabama Supreme Court in the case of *Butler Cotton Oil Co. v. Collins*, 200 Ala. 217, 75 So. 975 (1917) had occasion to deal with this very same problem. Judge Mayfield settled this question and we quote:

> In all of these cases, however, the property had existence, and the lien had attached before the right of action on the debt was barred or cut off by the statutes or by adjudication of bankruptcy. Here this action could not have been maintained when the bankrupt was discharged, because the property had no existence, actual or potential; it was, at most, a mere expectancy of possession in the future, and which, whatever might be its nature or character, could not have been enforced at any time prior to the discharge in bankruptcy. There was then no lien because there was nothing to which it could attach.

To allow the provable debts of the bankrupt to exist after his discharge, so as to be enforceable against all property he may subsequently acquire, would defeat the very purpose of the bankruptcy law. Debtors in the condition of this bankrupt (who had mortgaged all he should produce on his homestead), and those having recorded judgments against them, would practically get little, if any, relief against their provable debts....

We must in this case deal with the status which existed when this equitable right could have attached. When it could have first attached, there was no enforceable debt or demand for it to secure. While courts of equity enforce liens after personal action to enforce the debt is barred, they will not enforce those which come into existence after such actions are barred. To do so would in effect defeat the bankrupt laws and the statute of limitations.

Although jurisdiction of this Court to enter this Order has not been challenged, it seems proper to quote from the case of *Browne v. San Luis Obispo National Bank*, 462 F.2d 129 (9th Cir.1972), and to remark that jurisdiction over exempt and homestead property is even more unquestioned today since the rationale of *Lockwood v. Exchange Bank* was overruled by the inclusion of exempt property as property of the estate by the adoption of the Bankruptcy Code in 1978.

However, Mrs. Browne's property is not totally exempt as a homestead. She listed the property's value at $25,000; but as the head of a family, she may claim a homestead exemption not exceeding $20,000. California Civil Code § 1260(1). The excess formed part of her bankruptcy estate and was not exempt. Lockwood does not oust the bankruptcy court from jurisdiction to determine the validity of a lien against this excess portion of Mrs. Browne's estate. Cf. In re Moore, 288 F.Supp. 887, 888 (C.D., Cal., 1968). Under Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), the bankruptcy court has jurisdiction to hear what is essentially an ancillary and supplemental bill in equity to enforce a discharge granted to a bankrupt. However, the Supreme Court cautioned that this ancillary jurisdiction should be limited to "unusual circumstances"; where the legal remedy afforded by state adjudication "would be inadequate to meet the requirements of justice," the bankruptcy court could and should exercise its ancillary jurisdiction. Local Loan, supra, at 241, 54 S.Ct. at 698. See 1 Collier's pp. 341–348 and 1A Collier's pp. 1728–1731.

The essence of the present controversy is the interpretation and effect of the discharge order. The Bank has no lien against Mrs. Browne's property, as is discussed in III below. Even if the Assignment and Agreement created a lien, Mrs. Browne has not breached the terms of either the agreement assigning her rents or the agreement not to encumber or convey her land. She does not rent the property. She has not sold it, and her homestead declaration is not an encumbrance. Tahoe National Bank v. Phillips, 4 Cal.3d 11, 21, n. 14, 92 Cal. Rptr. 704, 710, n. 14, 480 P.2d 320, 328, n. 14 (1971).

Thus, the Bank's sole cause of action stems from the promissory note, which was listed on Mrs. Browne's schedule of debts. The bankruptcy court has jurisdiction to ensure that the discharge it granted to Mrs. Browne is not circumvented. See, e.g., Local Loan, supra; *Beneficial Finance Company of Oklahoma v. Sidwell*, 382 F.2d 275 (10th Cir. 1967). The requirements of justice require the exercise of jurisdiction in this case. Mrs. Browne's state remedy is inadequate. Major clarifications in the California law have rendered the state decision clearly erroneous. The cases discussed in part III below indicate that the Bank could not have a valid encumbrance which would allow it to comply with California Civil Code § 1241, which places restrictions upon forced sales of homestead properties. Finally, the Bank, a listed bankruptcy creditor, did

not appear in the bankruptcy proceedings, but sat on its "lien" for two years after the discharge before seeking to enforce it. Cf. In re Cleapor, 16 F.Supp. 481 (N.D.Ga., 1936). The integrity of the homestead law and the bankruptcy discharge require the bankruptcy court to assume jurisdiction in this case. Underlining in lieu of italics. Browne, supra, at 132 and 133.

IT IS, THEREFORE, FOUND, DETERMINED AND DECREED That neither Iron and Steel Workers Credit Union nor Janet Coggins has a lien interest or right in and to the real property, of the Debtor, described in the title policy issued by American Title Insurance Company, and there being no right of liens to protect nor reason exists for American Title Insurance Company to retain the deposit demanded of the Debtor, and such deposit should be promptly refunded and paid to the Debtor forthwith.

The Debtor suggests that he is also entitled to a remedy under § 522 f of the Bankruptcy Code because the alleged liens constitute a cloud on his title to real estate and impair his right of exemption to claim the property as a homestead.

Since the Court finds that no liens exist, no ruling is required on this alternate contention of the Debtor as that contention becomes moot.

Copies of this Order shall be served on Iron and Steel Workers Credit Union and its attorney of record, Maurice Rogers, and Janet Coggins and her attorney, Judy Carol Whalen, and shall be recorded in the Probate Court of the county where the land lies.