In re: Robert D. VINCENT and Sequatchie Power Company, Debtors and Debtors-In-Possession

CANADIAN SHIELD FINANCIAL CORPORATION, LTD., et al, Plaintiffs,

v.

ESTATE OF Irwin A. DEUTSCHER, et al, Defendants.

Bankruptcy Nos. 279–00105, 279–00106. Adv. No. 285–0234.

United States Bankruptcy Court, M.D. Tennessee.

Jan. 12, 1987.

Richard P. Jahn, Sr., Jahn & Jahn and N. Darrell Bridges, Anderson & Bridges and Richard C. Kennedy, Kennedy, Fulton & Koontz, for plaintiffs.

Douglas Fisher, D. Tracy Shaw, Howell, Fisher, Branham & North, for defendant, Aetna Cas. & Sur. Co.

James F. Sanders, James G. Thomas, for defendant, Estate of Irwin Deutscher.

## MEMORANDUM OF OPINION

JOHN F. RAY, JR., Chief Judge.

The cause before the Court is the motion of defendants, the Estate of Irwin Deutscher and Aetna Casualty & Surety Co. (hereinafter "Deutscher" and "Aetna" respectively), to declare this adversary proceeding to be a non-core proceeding and their jury demand.

This proceeding was commenced by the plaintiffs, a group of Canadian investors, to recover for alleged wrongs by Deutscher in his capacity as trustee or disbursing agent in this case. In their complaint, plaintiffs allege:

(a) that Irwin A. Deutscher, in his capacity as trustee and/or disbursing agent for debtors' estates, employed, or caused to be employed by said estates, certain persons associated with him who had interests adverse to the estates and, in many instances, without the approval of the bankruptcy court as required by 11 U.S.C. § 327;

(b) that while such employees were employed by the debtors' estates, Irwin A. Deutscher used his position as trustee and/or disbursing agent to convert such employees to his own private use and gain, without compensation to the debtors' estates;

(c) that Irwin A. Deutscher allocated the overhead expenses of his personal consulting and examiner businesses for private gain, in part, to the debtors' estates;

(d) that Irwin A. Deutscher caused an excessive number of persons to be employed by debtors' estates, whose employment was not in the best interest of the estates;

(e) that Irwin A. Deutscher improperly allocated overhead and other expenses to debtors' estates;

(f) that Irwin A. Deutscher improperly caused the debtors' estates to be charged with excessive, unnecessary and improper travel, hotel, employment agency and other expenses which were not in the best interest of the estates;

(g) that Irwin A. Deutscher directed the payment of compensation in the form of "services rendered" checks to certain of his "staff" from the debtors' estates without any consideration or services rendered therefor; and

(h) that Irwin A. Deutscher submitted to the bankruptcy court requests for payment of trustee's or disbursing agent's fees or commissions, which were not based upon the statutory commission set forth in 11 U.S.C. §§ 326 and 330 requiring such commissions to be based upon disbursements, but instead such requests were based upon all of the assets of the estate, including cash that had been received by Irwin A. Deutscher as such trustee or disbursing agent, a substantial part of which was never disbursed.

Plaintiffs allege that these acts make Deutscher liable for a breach of fiduciary duty and negligence. They allege they have been harmed because Deutscher's acts depleted the funds in the estate, leaving an insufficient amount to satisfy their claims. It is not clear whether the specific acts complained of occurred while Deutscher was acting as trustee, or whether they occurred after he had become the disbursing agent. For the purposes of this motion, this Court will assume the latter.

The asserted basis for core jurisdiction is 28 U.S.C. § 157(b)(2)(A):

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate.

Defendants seek to have these causes of action declared non-core, because they arise under state law. Defendants rely heavily on *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in support of their position. However, *Marathon* has been considerably vitiated by two later Supreme Court cases, *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) and *Commodity Futures Trading Commission v. Schor*, — U.S. ——, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986).

*Thomas* concerned the constitutionality of a mandatory binding arbitration scheme. This system was to set the amount of compensation due from one pesticide company

to another for the use of data in pesticide approval applications before the Environmental Protection Agency. The court concluded that even though the rights of private parties were adjudicated by a non-Article III tribunal, the matter adjudicated was so closely tied to the congressional scheme for the regulation of pesticides that it passed the requirements of Article III. 473 U.S. at ——, 105 S.Ct. at 3375, 87 L.Ed.2d at 425.

*Schor* involved a Commodity Futures Trading Commission ("CFTC") regulation that authorized the Board to hear state law counterclaims arising out of the same transaction alleged to be a violation of CFTC regulations. —— U.S. at ——, 106 S.Ct. at 3249, 92 L.Ed.2d at 683. The court upheld this exercise of power, saying that the state law nature of the counterclaim was not entitled to any "talismanic power." *Id.* —— U.S. at ——, 106 S.Ct. at 3258, 92 L.Ed.2d at 694. This same admonition applies to determinations of whether a particular proceeding is core or non-core by virtue of 28 U.S.C. § 157(b)(3).

While *Schor* concerns whether a grant of authority to a non-Article III tribunal is constitutional, the test it sets forth is applicable here, because the broad scope of bankruptcy jurisdiction relies for its constitutionality on the careful exercise of its powers by the bankruptcy court.

*Schor* outlines two areas of broad concern that are protected by Article III. The first is the personal right of the litigants to have their claim determined in an Article III forum. —— U.S. at ——, 106 S.Ct. at 3256, 92 L.Ed.2d at 691. The second is the structural interest of protecting "the role of the independent judiciary within the constitutional scheme of tripartite government. *Thomas* ... [473 U.S. at ——, 105 S.Ct. at 3325, 87 L.Ed.2d] at 409." *Id.* —— U.S. at ——, 106 S.Ct. at 3255, 92 L.Ed.2d at 690.

The personal right of a litigant to have his claim tried in an Article III forum is subject to waiver. In *Schor,* the petitioner waived his right to an Article III forum when he opted to bring an administrative claim rather than suit in the district court.

—— U.S. at —— - ——, 106 S.Ct. at 3256–57, 92 L.Ed.2d at 691–92.

The question of consent to jurisdiction is not as clear in this case, but it arises from the fact that this cause of action arises after the date of petition, and that it would not have arisen absent this bankruptcy proceeding.

There is an important distinction between claims that arise after a petition has been filed and those that existed before it, which became property of the estate under 11 U.S.C. § 541.

Indeed, the cases before us, which center upon appellant Northern's claim for damages for breach of contract and misrepresentation, involve a right created by *state* law, *a right independent of and antecedent to the reorganization petition* that conferred jurisdiction upon the bankruptcy court.

*Marathon,* 458 U.S. at 84, 102 S.Ct. at 2878. (emphasis added, footnote omitted)

 When a claim arises post-petition, the debtor is already under the protection of the bankruptcy court. The claim could not be brought absent a petition in bankruptcy, for the simple reason that it would not exist. *Id.* at 72 n. 26, 102 S.Ct. at 2872 n. 26. Those who deal with the debtor in its capacity as the debtor or debtor-in-possession have impliedly consented to have their claims tried by the bankruptcy court, for all of the reasons that the bankruptcy system was implemented, *e.g.,* speedy resolution of disputes and administration of the estate with a view to fairness for all creditors.

This implied waiver concept is implicit in the facts of *Schor* itself. There, pursuing a claim before the CFTC rather than opting to pursue recognized implied private right before the district court, amounted to a consent to the jurisdiction of the administrative law judge. —— U.S. at —— - ——, 106 S.Ct. at 3256–57, 92 L.Ed.2d at 691–92.

In *Thomas,* seeking to get a pesticide permit subjected a company to later binding arbitration to set compensation for the use of a company's data. 473 U.S. at ——,

105 S.Ct. at 3338, 87 L.Ed.2d at 427. Admittedly, the court did not decide whether this award would be enforceable in court. *Id.*

Of course, implied consent was one concept used to bring claimants into the summary jurisdiction of the bankruptcy referee under the old Bankruptcy Act. *Katchen v. Landy,* 382 U.S. 323, 335, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966). The basis for the rule in *Katchen* was that it was inequitable to allow persons to claim a right to proceeds from the estate, but not to have to pay for preferences unless a state court suit were instituted against them. *Id.*

■ This same reasoning can be applied here. Where a company benefits from the estate, as by receiving a bonding contract, it subjects itself to the core jurisdiction of the court.

The next question to be resolved is whether the exercise of core jurisdiction by this Court will impinge on the structural interests protected by Article III.

Article III, § 1 safeguards the role of the Judicial Branch in our tripartite system by barring congressional attempts "to transfer jurisdiction [to non-Article III tribunals] for the purpose of emasculating" constitutional courts, *National Insurance Co. v. Tidewater Co.,* 337 US 582, 644, [69 S.Ct. 1173, 1208, 93 L.Ed. 1556] (1949) (Vinson, C.J., dissenting). *Schor,* —— U.S. at ——, 106 S.Ct. at 3257, 92 L.Ed.2d at 692.

The court went on to list three factors to consider in determining whether an exercise of jurisdiction would impermissibly impinge on the structural interests protected by Article III. First is the question of "the extent to which the 'essential attributes of Judicial Power' are reserved to article III courts," second, the origin and importance of the right to be adjudicated and third, the concerns that drove Congress to depart from the requirements of Article III. *Id.* —— U.S. at ——, 106 S.Ct. at 3257, 92 L.Ed.2d at 693.

The extent to which judicial powers are reserved to Article III courts is resolved in the determination of whether a given proceeding is core or non-core. For the purposes of this motion, the question is whether the exercise of core jurisdiction would be unconstitutional. The essential attributes of judicial power would be exercised here by a non-Article III court, especially since, unlike the CFTC situation in *Schor,* an order from this Court would be enforceable without one from the district court. *Schor,* —— U.S. at ——, 106 S.Ct. at 3257, 92 L.Ed.2d at 693. Because of this, exercising this power in too broad a category of cases would be unconstitutional.

The nature of this claim is a private state law cause of action. However, the fact that it is a private cause of action and under state law is not, by itself, determinative.

We have explained that "the public rights doctrine reflects simply a pragmatic understanding that when Congress selects a quasi-judicial method of resolving matters that 'could be conclusively determined by the Executive and Legislative Branches,' the danger of encroaching on the judicial powers" is less than when private rights, which are normally within the purview of the judiciary, are relegated as an initial matter to administrative adjudication. *Thomas,* supra, [50] at ——, 87 L Ed 2d 409, 105 S Ct 3325 (quoting *Northern Pipeline,* supra, at 68, 73 L Ed 2d 598, 102 S Ct 2858 [at 2870]). Similarly, the state law character of a claim is significant for purposes of determining the effect that an initial adjudication of those claims by a non-Article III tribunal will have on the separation of powers for the simple reason that private common law rights were historically the types of matters subject to resolution by Article III courts. See *Northern Pipeline,* 458 US, at 68, n 20, 84, 73 L Ed 2d 598, 102 S Ct 2858 [at 2869–70 n. 20]; *id.,* at 90, 73 L Ed 2d 598, 102 S Ct 2858 [at 2881] (Rehnquist, J., concurring in judgment). The risk that Congress may improperly have encroached on the federal judiciary is obviously magnified when Congress "withdraw[s] from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty"

and which therefore has traditionally been tried in Article III courts, and allocates the decision of those matters to a non-Article III forum of its own creation. *Murray's Lessee v. The Hoboken Land and Improvement Co.*, [59 U.S.] 18 How 272, 284, 15 L Ed 372 (1856).

*Schor* ── U.S. at ──, 106 S.Ct. at 3258–59, 92 L.Ed.2d at 694–95. This does not mean that every assignment of a state law private right of action to a non-Article III tribunal violates Article III.

■ It is true, of course, that the misdeeds here, in part, concern an officer created by a plan of reorganization, and not by a provision of the Code. However, confirmation of a plan of reorganization is one proceeding at the core of the bankruptcy power 28 U.S.C. § 157(b)(2)(L). As such, disputes arising from orders confirming the plan are always cognizable as matters affecting the administration of the estate. *Franklin Computer Corp. v. Apple Computer Corp. (In re Franklin Computer Corp.)*, 60 B.R. 795, 802–3 (Bankr.E.D.Pa.1986); *Heaven Sent Ltd. v. Centennial Ins. Co. (In re Heaven Sent Ltd.)*, 50 B.R. 636 (Bankr.E.D.Pa.1985). *See also In re Johns-Manville Corp.*, 801 F.2d 60, 3 Bankr.L.Rep. (CCH) para. 71,465 (2d Cir. Sept. 10, 1986). It is not necessary to decide now whether any dispute arising after the filing of a petition in bankruptcy, during pendency of the administration of the estate, is automatically a core proceeding under § 157(b)(2)(A), *L.A. Clarke and Son Inc. v. Bullock Constr. Inc. (In re L.A. Clarke and Son Inc.)*, 51 B.R. 31, 33 (Bankr.D.D.C.1985), *see Allard v. Benjamin (In re DeLorean Motor Co.)*, 49 B.R. 900, 907 (Bankr.E.D.Mich.1985); *In re Lion Capital Group*, 46 B.R. 850, 859–60 (Bankr.S.D.N.Y.1985), or if it only covers those matters arising from orders under Chapter 3 of Title 11, *In re GHR Energy Corp.*, 60 B.R. 52, 61 (Bankr.S.D.Tex.1985), because this action is closely linked to the confirmation of a plan which is clearly a core matter.

■ Furthermore, bankruptcy courts may possess a form of ancillary jurisdiction over later enforcement of their orders. *In re Bodnar*, 45 B.R. 646, 648 (Bankr.N.D.

Ala.1985). (Ancillary jurisdiction over discharged debtors suit to have debts declared discharged); *Wesley Medical Center v. Wallace, (In re Wallace)*, 46 B.R. 802, 804 (Bankr.W.D.Mo.1984); (power to decide contempt order even where debtor disobeyed previous court order and later dismissed case); *see Ohio Hoist Manufacturing Co. v. LiRocchi*, 490 F.2d 105, 108 (6th Cir. 1974), *cert. dismissed* 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974), (district court has jurisdiction to decide state law claims arising from violation of federal statute which provides no remedy). The doctrine of ancillary jurisdiction arises from the inherent powers of courts to fully resolve matters affecting their orders or property in their control. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Here the property of the estate was drawn into this Court's exclusive jurisdiction by the filing of the bankruptcy petition, 28 U.S.C. § 1334(d) (1984). While confirmation of a plan of reorganization vests title to all property in the debtor, 11 U.S.C. § 1141(b), it does so only in accordance with the terms of the plan, § 1141(a). The debtors' property is in constructive control of the court for the life of the plan. As a result, ancillary jurisdiction would allow this Court to decide disputes arising from the property of the estate, especially where they arise from the malfeasance of court-appointed officers. While "the wholesale importation of concepts of pedantor ancillary jurisdiction ... may create greater constitutional difficulties," *Schor*, ── U.S. at ──, 106 S.Ct. at 3257, 92 L.Ed.2d at 693, limiting the concept to violations by court-appointed officers, arising from clearly core proceedings, is a "sufficiently narrow class" of claims that there is no danger of usurping the protections of Article III. *Id.* ── U.S. at ──, 106 S.Ct. at 3259, 92 L.Ed.2d at 695. Thus, the court constitutionally may conclusively determine alleged violations of its orders where those orders are themselves core proceedings.

This is all the more true when one examines the congressional purpose in enacting the Bankruptcy Code. The purpose of the

act is to provide a speedy forum for the resolution of disputes to the debtors' funds, and in Chapter 11 to effectuate the rehabilitation of the debtor. To require violations by court-appointed officers to be heard by Article III courts would delay these purposes, an area in which Congress' power is plenary. U.S. Const. Art I, § 8. Thus, this claim is sufficiently related to the congressional scheme of bankruptcy administration that it is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

As this is a core proceeding, defendants' demand for a jury trial must be denied.

The Bankruptcy Reform Act has not changed the fundamental equitable nature of bankruptcy proceedings. *See Katchen v. Landy, supra; Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). As courts of equity, bankruptcy courts have traditionally acted without juries. *In re G.S.F. Corp.*, 7 B.R. 807 (Bankr.D.Mass.1980); *In re Lafayette Radio Electronics Corp.*, 7 B.R. 187 (Bankr. E.D.N.Y.1980). The Bankruptcy Reform Act, 28 U.S.C. § 1411(a) (1984), provides: "(a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim."

█ This cause of action is not a personal injury claim or a wrongful death action. Where it is not, there is no right to a jury trial in a core proceeding, no matter what the nature of the underlying cause of action. *Katchen, supra; Bedford Computer Corp. v. Ginn Publishing Inc. (In re Bedford Computer Corp.)*, 61 B.R. 594 (Bankr. D.N.H.1986); *Thorp Credit Inc. of Maryland v. Lee (In re Lee )*, 50 B.R. 683, 684 (Bankr.D.Md.1985); *Jacobs v. O'Bannon (In re O'Bannon )*, 49 B.R. 763, 769 (Bankr.M.D.La.1985). Thus, defendants' jury demand is denied.