EDGCOMB METALS COMPANY

v.

EASTMET CORPORATION.

Civ. A. No. N–88–1383.

United States District Court,
D. Maryland.

June 30, 1988.

Richard J. Magid, Paul M. Nussbaum, and Whiteford, Taylor & Preston, of Baltimore, Md. and William J. Rochelle, III, Adam C. Harris, and Kronish, Lieb, Weiner & Hellman, New York City, for plaintiff.

Mark J. Friedman, Timothy F. McCormack, Eric B. Miller, and Piper & Marbury of Baltimore, Md., for defendant.

## MEMORANDUM

NORTHROP, Senior District Judge.

Plaintiff Edgcomb Metals Company's ("Edgcomb") suit is one for breach of a contract made with a debtor under the protection of the bankruptcy court. Prior to filing this action, Edgcomb filed an administrative claim in the bankruptcy court seeking compensation for the identical obligation in suit here. Now pending before the Court is the defendant debtor Eastmet Corporation's ("Eastmet") motion to refer this case to the bankruptcy court pursuant to 28 U.S.C. § 157. Edgcomb opposes that motion and asks for a default judgment in this case and, for withdrawal of its administrative claim or for an injunction precluding Eastmet from pursuing adjudication of the administrative claim.

After careful consideration of the parties' pleadings, the Court finds that no hearing is necessary. Local Rule 6. For the reasons set forth below, defendant's motion for referral to the bankruptcy court is granted, and plaintiff's motions are denied in all respects.

## I.

In September 1987, some two years after Eastmet filed its Chapter 11 case, Eastmet and Edgcomb entered into a contract ("September contract") for the sale of approximately 1,000 tons of stainless steel coil. That contract provided that Eastmet deliver all of the stainless steel coil in the fourth quarter of 1987. The last shipment was to be made by December 21, 1987. Edgcomb alleges that Eastmet breached the agreement by supplying only 155 tons of steel coil, and by refusing to deliver the remaining 889 tons of coil unless Edgcomb agreed to increases in the purchase price.

Without waiving its rights to enforce the September contract, Edgcomb initiated negotiations with Eastmet to secure delivery of the balance of the coil. In March 1988, Eastmet and Edgcomb agreed to a new contract ("March contract") specifying new price and payment terms. However, Edgcomb reserved its rights to enforce the September contract in the event that Eastmet failed to perform under the March contract. Edgcomb alleges that Eastmet subsequently informed it that Eastmet would not perform under that second contract.

On April 5, 1988, the bankruptcy court entered an order setting May 4, 1988 as a "bar date" for filing proofs of claim for administrative expenses against the estate. To preserve its claim against Eastmet's estate for the debt incurred under the September and March contracts, Edgcomb filed a proof of administrative claim in the bankruptcy court on May 4, 1988. Eight days later, Edgcomb initiated this action seeking *inter alia* damages stemming from Eastmet's breach of those same agreements.

## II. Analysis

To understand the legal issue in this case, one must begin with the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In that case, a bankrupt corporation in the midst of federal bankruptcy proceedings brought an ordinary state contract claim against another corporation for monies owed pursuant to a pre-petition contract. The Supreme Court ruled that federal bankruptcy judges lacked the constitutional authority to determine such claims because they "do not enjoy the protections constitutionally afforded to Article III judges." *Marathon, supra,* 458 U.S. at 60, 102 S.Ct. at 2866. In so holding, the Court struck down the key jurisdictional provision of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549, ("the 1978 Act") granting bankruptcy judges the power to adjudicate claims "related to," but not "arising under" a Title 11 case. Central to the Court's conclusion was its determination that the right involved in *Marathon* was one created by state law, "a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court." *Id.* at 84, 102 S.Ct. at 2878. Thus, Congress' power to control the manner in which that right is adjudicated is plainly at a minimum. *Marathon* teaches that "Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants and subject only to appellate review." *Thomas v. Union Carbide Agricultural Products,* 473 U.S. 568, 584, 105 S.Ct. 3325, 3335, 87 L.Ed.2d 409 (1985). Nothing in the case, however, implicates the bankruptcy court's jurisdiction to decide matters within its traditional competence.

Congress responded to *Marathon* by enacting the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 333 ("1984 Amendments"). Those amendments made two signal changes. First, Congress modified the jurisdictional section contained in the 1978 Act, by granting original and exclusive jurisdiction of all cases under Title 11, to the district courts. 11 U.S.C. §§ 101 *et seq.*[1] The district court, in turn, is provided discretion to refer proceedings to the bankruptcy court. 28 U.S.C. § 157. Second, Congress bifurcated bankruptcy jurisdiction, classifying proceedings as either "core" or "non-core." Upon referral from the district court, a bankruptcy court can enter final orders and judgments in core matters. 28 U.S.C. § 158(b). Representative Kastenmeier, one of the 1984 Amendments' co-sponsors, explained that core proceedings are those matters "integral to the core bankruptcy function of restructuring debtor-creditor rights," including "all necessary aspects of a bankruptcy case." 130 Cong. Rec. E 1109–09 (daily ed. March 20, 1984). Section 157(b)(2) supplies an extensive but nonexclusive list of core proceedings. Some courts have adopted a narrow approach in determining the scope of what matters may be core; others have taken a more expansive approach. *See Atlas Fire Apparatus, Inc. v. Beaver,* 56 B.R. 927, 932 (Bankr.E.D.N.C.1986) and the authorities there cited. Be that as it may, the 1984 Amendments make clear that a matter shall not be deemed "non-core" merely because its resolution is controlled by state law. 28 U.S.C. § 157(b)(3).

Non-core proceedings are "*Marathon* type" suits, that is, claims "concerned only with state law issues that [do] not arise in the core bankruptcy function of adjusting debtor-creditor rights." 130 Cong.Rec. H–1848 (daily ed. March 21, 1984). If the parties to a non-core proceeding consent,

---

**1.** Title 28 U.S.C. §§ 1334(a) and (b) define the source and limits of subject matter jurisdiction in the bankruptcy courts. That statute states:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

the bankruptcy judge may decide the case and enter orders and judgments as if the matter were a core proceeding. Absent the parties' consent, the bankruptcy judge may not make a final determination, but must submit proposed findings of fact and conclusions of law to the district court. Only the district court is permitted to enter final orders and judgments in those circumstances. Moreover, the district court judge is required to perform a de novo review of those matters to which any party has "timely and specifically" objected. 28 U.S.C. §§ 157(c)(1) and (c)(2). Finally, the 1984 Amendments provide that the bankruptcy court may (and sometimes must) abstain from hearing non-core matters. 28 U.S.C. § 1334(c).

Edgcomb's objections to the bankruptcy court's exercise of jurisdiction rest on its contention that the claim in suit is a non-core "*Marathon*-type" action. Edgcomb argues that this must be so because *Marathon* and its progeny establish that common law contract suits are archetypical "related proceedings" entitling the complainant to a jury trial. It urges that referral to the lower court is improper because the bankruptcy judge's post-*Marathon* authority to conduct jury trials is uncertain.[2] Edgcomb thus contends that were this Court to refer this matter to the bankruptcy court, the Court would be required to withdraw the reference.

Eastmet, on the other hand, points to plaintiff's filing of an administrative claim as proof of plaintiff's consent to the bankruptcy court's jurisdiction. In making this argument, Eastmet relies upon decided law holding that the filing of a claim against the estate is construed as a waiver of the personal litigant's right to an Article III adjudication. *See Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (reaffirmed in *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 3258, 92 L.Ed.2d 675 (1986)); *In re STN Enterprises, Inc.*, 73 B.R. 470 (Bankr.D.Vt.1987); *In re NTW*

*Inc.*, 69 B.R. 656, 659 (Bankr.E.D.Va.1987); *In re Sun West Distributors, Inc.*, 69 B.R. 861, 864–65 (Bankr.S.D.Calif.1987); *In re Bokum Resources Corp.*, 64 B.R. 924 (Bankr.N.M.1986); *Hauytin v. Grynberg*, 52 B.R. 657, 661 (Bankr.D.Col.1987); *In re Lombard-Wall*, 44 B.R. 928, 936 (Bankr.S.D.N.Y.1984); *In re Southern of Rocky Mount, Inc.*, 36 B.R. 175, 177 (Bankr.E.D.N.C.1983). Edgcomb disputes that proposition citing an express disclaimer in its bankruptcy filing designed to vitiate the appearance of consent. That disclaimer provides:

> Edgcomb reserves the right to withdraw this administrative proof of claim if it is determined that the filing of this administrative proof of claim will subject Edgcomb to the jurisdiction of the bankruptcy court generally or with respect to any adversary proceedings therein. *The filing of this proof of administrative claim by Edgcomb has been compelled and does not in any way indicate or constitute, and may not be construed to indicate or constitute, Edgcomb's consent to the exercise of jurisdiction over it by any tribunal.*

(Emphasis added). Edgcomb Proof of Administrative Claim, para. 10. Edgcomb also contends that its filing in the lower court was "compelled" in as much as the bankruptcy judge has set a bar date for the filing of administrative claims.

Simply put, resolution of this matter turns upon two questions: first, has Eastmet consented to the jurisdiction of the bankruptcy court; and second, would referral of this action to that court impinge upon the structural interest protected by Article III. *Schor, supra*, 478 U.S. at 845–48, 106 S.Ct. at 3255–56; *In re Jennings*, 83 B.R. 752 (D.N.1988); *In re STN Enterprises, supra*, 73 B.R. at 476–82, 483–84; *In re Vincent*, 68 B.R. 865, 867 (Bankr.M.D.Tenn.1987). This two-part inquiry is necessary because a finding of consent, standing alone, would not obviate the constitu-

---

**2.** On March 2, 1988, this Circuit concluded that except in negligence and wrongful death actions, there is no right to a jury trial in bankruptcy proceedings. *In re Harbour*, 840 F.2d 1165, 1179 (4th Cir.1988). That decision disposes of plaintiff's contention that the bankruptcy court would be obliged to conduct an "advisory jury trial."

tional infirmity arising from the improper transfer of a matter to a non-Article III court. The Supreme Court has emphasized that:

> To the extent that this structural principle is implicated in a given case, the parties cannot by consent cure the constitutional difficulty for the same reason that the parties by consent cannot confer on federal courts subject matter jurisdiction beyond the limitations imposed by Article III. *Commodity Futures Trading Commission v. Schor, supra,* 478 U.S. at 849–51, 106 S.Ct. at 3257, 92 L.Ed.2d at 692.

With these principles in mind, the Court turns to the merits of the pending motion.

### A. *Consent*

■ Settled law holds that "Article III does not confer on litigants an absolute right to the plenary consideration of every nature of claim by an Article III court." *Schor, supra,* 478 U.S. at 847–48, 106 S.Ct. at 3256; *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 584, 105 S.Ct. 3245, 3256, 87 L.Ed.2d 409 (1985). As with other personal constitutional rights, the personal right to an independent and impartial federal adjudication guaranteed by Article III is subject to waiver. *See Schor, supra,* 478 U.S. at 847–48, 106 S.Ct. at 3256, and the authorities there cited. *Katchen v. Landy,* the decision cited by the defendant, is premised on the theory that one who files a claim in a bankruptcy proceeding is subject to the summary jurisdiction of the bankruptcy court. The Supreme Court's most recent pronouncements confirm the concept of jurisdiction by consent to an Article I court adjudication, express or implied, as a waiver of a litigant's personal right to an adjudication by an Article III court. *See, Schor, supra,* 478 U.S. at 851–52, 106 S.Ct. at 3258; *Thomas, supra,* 473 U.S. at 591, 105 S.Ct. at 3339. In the court's judgment, this case raises that issue, but in a different context than one suggested by the litigants. This case asks whether an entity that chooses to contract with a debtor corporation in its capacity as debtor-in-possession, knowing that the debtor is subject to the bankruptcy court's control, has consented to the bankruptcy court's jurisdiction. The Court thinks it has.

■ Central to the Court's conclusion is the fact that this suit, unlike the one in *Marathon,* does not involve a right "independent of *and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court.*" *Marathon, supra,* 458 U.S. at 84, 102 S.Ct. at 2878. Rather, this action seeks compensation for a post-petition debt—one incurred during the bankruptcy court's administration of the estate and as a result of the debtor's efforts to liquidate estate assets. The principle that those who deal with a debtor-in-possession implicitly consent to the bankruptcy court's jurisdiction is one supported by post-*Marathon* case law, *In re Vincent,* 68 B.R. 865 (Bankr.M.D.Tenn. 1987); *In re Victor Dye Works, Inc.,* 48 B.R. 943, 946 (Bankr.E.D.Pa.1985), and by authority antedating that decision. *Fox Metal Industries Inc. v. Frontier Plumbing & Heating,* 453 F.2d 1128 (10th Cir. 1972); *Governor Clinton Co. v. Knott,* 120 F.2d 149 (2d Cir.1941), *appeal denied,* 314 U.S. 701, 62 S.Ct. 50, 86 L.Ed. 561; *F.W. Koenecke & Sons, Inc.,* 369 F.Supp. 558 (N.D.Ill.1973); *In re California Eastern Airways,* 95 F.Supp. 348 (D.Del.1951); *In re Alan Wood Steel,* 1 B.R. 167 (Bankr.E.D.Pa.1979).

One case reaching this result does so on the ground that when a cause of action arises post-petition, the debtor is already under the bankruptcy court's supervision and, that the claim would not have arisen absent the bankruptcy proceeding. *In re Vincent, supra,* 68 B.R. at 867. Thus, Chief Judge John F. Ray, Jr., United States Bankruptcy Court, Middle District of Tennessee explained:

> When a claim arises post-petition, the debtor is already under the protection of the bankruptcy court.... Those who deal with the debtor in its capacity as the debtor or debtor-in-possession have impliedly consented to have their claims tried by the bankruptcy court, for all of the reasons that the bankruptcy system was implemented, e.g., speedy resolution of

disputes and administration of the estate with a view to fairness for all creditors. *Id.*

Relying upon the implied waiver concept articulated in *Katchen,* Judge Ray noted that *Katchen* was predicated on the reasoning that "it was inequitable to allow persons to claim a right to proceeds from the estate, but not to have to pay for those preferences unless a state court suit were instituted against them." *Id.* at 868. Judge Ray concluded that that logic obtains with respect to post-petition contract claims as well. Thus, "[w]here a company benefits from the estate, as by receiving a bonding contract, it subjects itself to the core jurisdiction of the court." *Id.*

Other cases finding implied consent to the bankruptcy court's jurisdiction hold that a contract with debtor-in-possession is, in substance, a contract with the bankruptcy court itself. *See e.g., Governor Clinton Co. v. Knott, supra,* 120 F.2d at 152; *In re F.W. Koenecke & Sons, Inc., supra,* 369 F.Supp. at 561; *In re California Eastern Airways, supra,* 95 F.Supp. at 351; *In re Victor Dye Works, Inc., supra,* 48 B.R. at 946; *In re Alan Wood Steel Co., supra,* 1 B.R. at 168–69. As the *Alan Wood Steel* court explained:

> With respect to contracts made by trustees, debtors in possession and other officers of the bankruptcy court, the necessity of the court retaining exclusive jurisdiction over matters arising out of such contracts is even more pronounced than in the case of other matters arising during the administration of a bankrupt estate. The courts have therefore adopted an extreme position with respect to this and have ruled that a party contracting with an officer of the court in fact contracts with the court itself, and by such act *subjects himself for the purposes of the contract to the summary jurisdiction of the court.*

*In re Alan Wood Steel Co. supra,* at 168 (quoting *In re California Eastern Airways, supra,* at 351) (emphasis added). The quoted passage prompted the First Circuit to observe that "[g]iven potential court supervision of estate administration, the legal fiction that the debtor-in-posses-sion is a court official and that the contract is with the court itself is a fiction that borders on the truth." *In re Arnold Print Works,* 815 F.2d 165, 170 (1st Cir.1987).

■ Nor does the authority cited by Edgcomb contradict that conclusion. In this connection, plaintiff's argument that 28 U.S.C. § 959(a) entitles it to a jury trial on a post-petition contract claim is not well-taken. That statute provides in pertinent part that:

> [T]rustees ... including debtors in possession, may be sued ... with respect to any of their acts or transactions in carrying on business connected with such property. *Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.*

Without reference to any authority, Edgcomb contends that "[b]eing forced to waive a jury trial to preserve a claim for breach of a post-petition contract violates 28 U.S.C. § 959(a) *which Congress adopted to insure that a plaintiff would have a jury trial when a debtor in possession breaches a post-petition contract.* Response of Edgcomb Metals Company at 1. But that is simply incorrect. As the case law makes clear "[t]he exception created in 28 U.S.C. § 959(a) is intended to permit actions redressing *torts* committed in furtherance of the bankrupt's business operations...." *In re American Associated Systems, Inc.,* 373 F.Supp. 977, 979 (E.D. Ky.1974) (emphasis added); *In re Wall Tube and Metal Products Co.,* 56 B.R. 918, 925 (Bankr.E.D.Tenn.1986) (same). Nothing in the legislative history of the statute displaces the authority of a court of equity to act upon matters within its usual competence. *See Diner's Club, Inc. v. Bumb,* 421 F.2d 396, 398–400 (9th Cir.1970) (tracing the legislative history). Nothing in the legislative history grants a litigant a jury trial where it is not otherwise entitled to one. *See e.g., Diner's Club, Inc. supra; cf. Fidelity Mortgage Investors Co. v. Camelia Builders, Inc.,* 550 F.2d 47, 56 (2d Cir.1976) (section 959 does not guarantee

creditors of a debtor-in-possession a trial in the forum of the creditor's choosing). In these circumstances, the Court does not understand how that Statute addresses, much less controls, the resolution of the issues presented here.

Nor are Edgcomb's cases dealing with implied consent in the context of an administrative filing helpful. *See* Response of Edgcomb Metals Company at 3–5. For the reasons stated at length, the Court believes that Edgcomb consented to the bankruptcy court's jurisdiction *long before* it made that filing. The Court perceives no unfairness in this result. As the First Circuit recently observed:

> A party who contracts with an apparently healthy company—a company that has not filed a petition in bankruptcy—may find it unpleasantly surprising to have to defend its *pre*-petition contract in a bankruptcy court, without a jury or Article III protections. But it is difficult to see any unfair surprise in bringing a post-petition contract action before a bankruptcy court. *Parties who contract with a bankrupt company's trustee or with a debtor-in-possession know that they are dealing with an agent responsible to a bankruptcy court; that the bankruptcy court would resolve subsequent disputes should therefore come as no surprise. Cf.* 41 U.S.C. §§ 601 et seq. (1982) (establishing that parties who enter into contracts with the government subject themselves to a set of administrative procedures for resolving disputes growing out of those contracts.) The risk of unfairness is therefore smaller here than in *Marathon.*

*In re Arnold Print Works, supra* at 170. That rationale obtains here.

**B. *Subject Matter Jurisdiction***

■ The Court's conclusion that Edgcomb waived its right to adjudication of its claim before an Article III court does not determine that this case is one the Constitution permits the bankrutcy court to decide. The extent to which judicial powers are committed to Article III courts turns upon whether a particular proceeding is core or non-core. Simply put, the issue is whether the exercise of core jurisdiction would cause constitutional problems. That question necessarily arises where, as here, referral to the bankruptcy court sanctions the exercise of judicial power by a non-Article III judge possessing the authority to enter final judgments.

These considerations must be viewed in light of the 1984 Amendments' failure to supply an explicit definition for the term "core proceeding." The uncertainty surrounding what constitutes a core proceeding has led to two general interpretations of the contours of core jurisdiction under 28 U.S.C. § 157(b)(2). *In re National Equipment & Mold Corp.*, 71 B.R. 24, 26 (Bankr.N.D.Ohio, 1986); *In re Sun West Distributors, supra,* 69 B.R. at 863; *Mansker v. Campbell,* (*In re Mansker*), 60 B.R. 803 (Bankr.D.Mass.1986). The "expansive approach" construes the term core proceedings broadly to embrace all proceedings that come within the literal definitions set out in section 157(b)(2)[3]. Courts adhering to that view do so on the ground that the 1984 Amendments remedied the constitutional infirmities *Marathon* found in the 1978 Act.

The "restrictive approach," on the other hand, holds that the term core proceeding must be interpreted narrowly in light of *Marathon.*[4] Those cases conclude that the

3. *See, e.g., In re Wood,* 52 B.R. 513 (Bankr.N.D. Ala.1985); *Matter of Baldwin-United Corp.,* 52 B.R. 539 (Bankr.S.D.Ohio 1985); *In re Pied Piper Casuals, Inc.,* 50 B.R. 549 (Bankr.S.D.N.Y.1985); *In re All American of Ashburn, Inc.,* 49 B.R. 926 (Bankr.N.D.Ga.1985); *In re De Lorean Motor Co.,* 49 B.R. 900 (Bankr.E.D.Mich.1985); *In re Harry C. Partridge, Jr. & Sons, Inc.,* 48 B.R. 1006 (Bankr.S.D.N.Y.1985); *In re Lion Capital Group,* 46 B.R. 850 (Bankr.S.D.N.Y.1985); *Macon Prestressed Concrete Co. v. Duke,* 46 B.R. 727 (D.Ga.

1985); *In re Marketing Resources Intern Corp.,* 43 B.R. 71 (Bankr.E.D.Pa.1984).

4. *See, e.g., In re Sturm,* 66 B.R. 325 (Bankr.N.D. Ill.1986); *In re L.T. Ruth Coal Co., Inc.,* 66 B.R. 753 (Bankr.E.D.Ky.1986); *In re Shaford Companies, Inc.,* 52 B.R. 832 (Bankr.D.N.H.1985); *In re TWI, Inc.,* 51 B.R. 470 (Bankr.E.D.Va.1985); *In re American Energy, Inc.,* 50 B.R. 175 (Bankr.D. N.D.1985); *In re Morse Electric Co., Inc.,* 47 B.R. 234 (Bankr.N.D.Ind.1985); *In re Pierce,* 44 B.R. 601 (D.Colo.1984); *Mohawk Industries v. Robin-*

1984 Amendments do not cure the constitutional difficulties detailed in *Marathon* but rather "adjust the bankruptcy court's jurisdiction to comport with the guidelines established by the Supreme Court." Following that logic, many of those decisions also hold common law contract actions cannot fall within section 157(b) because a broad reading of that section would nullify *Marathon*. *See, e.g., In re Castle-rock Properties,* 781 F.2d 159, 162 (9th Cir.1986); *In re K-Rom Construction Corp.,* 46 B.R. 745, 749 (S.D.N.Y.1985); *In re Mohawk Industries, Inc., supra,* at 465–66; *In re American Energy, Inc.,* 50 B.R. 175, 178–79 (Bankr.D.N.D.1985).

Other cases, focusing on the post-petition status of the contract claim, reach a contrary result. *See e.g. In re Arnold Print Works, supra; In re Tidwell Industries, Inc.,* 87 B.R. 345 (Bankr.E.D.Pa.1988); *In re J.B. VanSciver, Co.,* 73 B.R. 838 (Bankr.E.D.Pa.1987); *In re L.A. Clarke and Aon, Inc.,* 51 B.R. 31 (Bankr.D.C.1985); *but see, In re Maislin Industries,* 50 B.R. 943 (Bankr.D.Mich.1985) (reaching a contrary result based on pre-petition status); *In re Morse, supra* at 237 (same). These decisions conclude that, both as a historical matter and a practical one, post-petition contracts with debtors-in-possession arise in the administration of the bankruptcy estate. Particularly persuasive is the First Circuit's reasoning in *In re Arnold Print Works.* In that case as in this one, the debtor corporation continued to manage its property as a "debtor in possession" subsequent to the filing of its Chapter 11 case. And, in that case as with this one, the debtor entered into a post-petition contract with another corporation as part of an effort to sell estate assets. Thereafter, a dispute arose as to the quality of the debtor's product and the corporation contracting with the debtor refused to pay the purchase price.

The debtor sued on the contract claim in the bankruptcy court. The defendant corporation objected to the bankruptcy court's jurisdiction on the ground that the debtor's claim was a state contract action thereby making the proceeding non-core. The defendant asked the bankruptcy court to abstain, forcing the debtor to sue in state court and permitting the defendant to insist on a jury trial. Although the bankruptcy court agreed that the proceeding was non-core, it declined to abstain. *See In re Arnold Print Works, Inc.,* 54 B.R. 562, 569 (Bankr.D.Mass.1985) (citing *Mohawk Industries, supra*). The defendant corporation then appealed the jurisdictional issue. The district court also concluded that the proceeding was non-core, but held that the lower court should have abstained. The debtor appealed that decision.

The First Circuit reversed. Central to the decision making of the Court was its view that unlike the pre-petition claim in *Marathon,* post-petition contracts do not involve rights "independent of" or "antecedent to" the filing of the bankruptcy petition. In those circumstances, the First Circuit had no difficulty placing the action within the definitional provisions contained in § 157(b). Writing for the panel, Judge Breyer reasoned that "[t]he action of a debtor-in-possession to collect a post-petition debt arising from the sale of the estate's assets, unlike a suit to recover a pre-petition debt, falls within the literal wording of 28 U.S.C. § 157(b)(2)(A), matters concerning the administration of the estate, because it involves a claim that arose out of the administrative activities of the debtor-in-possession." *Id.* at 168 (citing *In re L.A. Clarke & Son, Inc., supra* at 32. The Court similarly concluded that the action "falls within the literal wording of 28 U.S.C. § 157(b)(2)(O) other proceedings affecting the liquidation of the assets of the estate because the claim arose out of the debtor's efforts to liquidate estate assets." *Id.* (citing *In re Franklin Computer Corp., supra* at 625–26).

In making this determination, the First Circuit observed that the majority of courts considering similar post-petition claims have concluded that they are core. *Id.*

*son Industries,* 46 B.R. 464 (D.Mass.1985); *In re Smith-Douglass, Inc.,* 43 B.R. 616 (Bankr.E.D.N. C.1984); *In re Dakota Grain Systems, Inc.,* 41 B.R. 749 (Bankr.D.N.D.1984).

*See, e.g., In re Mansker, supra,* (holding an action for post-petition breach of an agreement to purchase property to be a core proceeding); *In re Clarke, supra,* (holding an action to recover a post-petition account receivable to be core); *In re Franklin Computer, Corp., supra,* (holding an action to recover a post-petition account receivable to be core); *In re All American of Ashburn, Inc.,* 49 B.R. 926 (Bankr.N.D.Ga.1985) (holding an action to recover a post-petition account receivable to be core); *See also In re Epi-Scan, Inc.,* 71 B.R. 975 (Bankr.N.J.1987) (holding an action to recover a post-petition account receivable to be core). The court distinguished *Mohawk Industries, supra,* the case relied upon by the lower courts, because "that case does not in fact present a direct holding to the contrary, for it involved a pre-petition, not a post-petition debt; thus the *Mohawk Industries* claim did not arise out of the administration of the estate." *In re Arnold Print Works, supra,* at 168. Bolstering the Court's conclusion was the fact that the leading treatise on bankruptcy law agrees that the "better result" is that post-petition proceedings are core. Thus, 1 King, Collier on Bankruptcy ¶ 3.01, at 3–43, 3–44 (15th ed. 1988) notes:

> Arguments may once again arise as to whether dealing with a trustee or debtor in possession gives rise to a core proceeding as opposed to a "related" matter. It was held under the former Bankruptcy Act that such dealings constituted consent to the summary jurisdiction of the bankruptcy court to resolve controversies arising therefrom. Such cases are certain to arise again under the 1984 legislation.
>
> A conflict exists in cases decided under the 1984 legislation with respect to whether an action brought on a postpetition account is a "related" or a "core" matter. The better result is that the proceeding is core; such a cause of action clearly "arises in" the title 11 case, and was not owned by the debtor at the time the title 11 case was commenced.

So too, the Court pointed to passages from the legislative history indicating Congress'

intent that the term "core proceedings" be read broadly. In this connection, the Court quoted statements by Representative Kastenmeier indicating that "jurisdiction in core bankruptcy proceedings is broader than the summary jurisdiction under pre–1978 law." *Id.* at 168 (citing 130 Cong.Rec. E1108 (daily ed. March 20, 1984)). And, as the First Circuit observed, summary jurisdiction under pre–1978 law covered post-petition claims. *See infra* p. 550 and the cases there cited.

The short of it is that nothing in this case persuades the Court that the post-petition action here ought to be treated differently from the one in *Arnold Print Works.* Indeed, those claims are analytically indistinguishable. No constitutional infirmity is implicated, where, as here, the right involved is not antecedent to, but clearly arises in the administration of the bankruptcy estate. In these circumstances, this Court, like the First Circuit, has no trouble holding that the post-petition claim in suit falls within the literal wording of section 157(b)(2)(A) and perhaps section 157(b)(2)(O), as well.

The fact that this claim depends upon state law issues rather than federal ones does not alter the Court's conclusion. The 1984 Amendments specifically states that "the determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). Notwithstanding this, a number of bankruptcy courts have refused to hear state contract claims assuming that *Marathon* mandates a blanket prohibition on the exercise of jurisdiction over such suits. *See, e.g., In re Sokol,* 60 B.R. 294 (Bankr.N.D.Ill.1986); *Mohawk Industries, supra; In re Pierce,* 44 B.R. 601 (D.Colo. 1984); *In re Shaford Companies, Inc.,* 52 B.R. 832 (Bankr.D.N.H.1985); *In re American Energy Inc., supra; In re Bokum Resources Group, supra.*

*Commodity Futures Trading Commission v. Schor, supra,* decided *after* many

of those cases,[5] dispels any doubt on this point. The Court there emphasized that:

Of course, the nature of the claim has significance in our Article III analysis quite apart from the method prescribed for its adjudication. The counterclaim asserted in this case is a "private" right for which state law provides the rule of decision. It is therefore a claim of the kind assumed to be at the "core" of matters normally reserved to Article III courts. Yet this conclusion does not end our inquiry; just as this Court has rejected any attempt to make determinative for Article III purposes the distinction between public rights and private rights, *there is no reason inherent in separation of powers principles to accord the state law character of a claim talismanic power in Article III inquiries.* (Citations Omitted).

*Schor, supra,* 106 S.Ct. at 3259. The state law character of a claim is significant for purposes of assessing the effect that an adjudication by a non-Article III court will have on the separation of powers *Id.* This is so for the simple reason "that private common law rights were historically subject to resolution by Article III courts." *Id.* Thus, whenever it appears that operation of a Congressionally mandated scheme withdraws from Article III tribunals matters traditionally tried in those courts, the court's inquiry must be searching *Id.*

No problem of that sort arises here. As the cases cited earlier in this Memorandum make clear, the history of bankruptcy jurisdiction under the pre–1978 law indicates that post-petition claims have historically been tried in summary proceedings. Nothing in the narrow holding in *Marathon,* or in subsequent decisions, or in the 1984 Amendments indicates any desire to disturb that traditional jurisdiction. In sum, because neither party in this case owned the cause of action prior to the filing of the bankruptcy petition, and because any determination will affect significantly the administration of the bankruptcy estate, the Court is satisfied that referral is warranted. Accordingly, for the reasons stated

herein, defendant's motion for referral of this matter to the bankruptcy court is granted, and plaintiff's motions are denied in all respects.

---

**5.** *Commodity Futures Trading Commission v.* *Schor* was decided July 7, 1986.